## CARPENTER STEEL CO. v. METROPOLITAN-EDISON CO.

(District Court, E. D. Pennsylvania. December 10, 1920.)

No. 2113.

1. **Corporations ⟨⟩391—Policy of controlling public utility is state question.**
   The policy of the law, which controls or should control public utility corporations and their relations to the public, is peculiarly a domestic policy, to be determined by the state concerned and to be enforced as so determined.

2. **Courts ⟨⟩493(3)—Federal court will not entertain question already presented to state Public Service Commission.**
   Whether a state Public Service Commission is an administrative department of the state government, or whether it is possessed of judicial powers and functions, a court of the United States will not inquire into its powers and jurisdiction over a question pending before it, but will refuse to interfere, leaving the parties to the jurisdiction first invoked, and to their right of removal or appeal to the courts of the United States.

3. **Courts ⟨⟩490—Comity yields to right to invoke United States courts.**
   All considerations of comity must give way to a right of citizens of the United States to invoke the powers and process of a court of the United States to defend or enforce their rights.

4. **Electricity ⟨⟩11—Court can restrain collection of new rates, without bond, pending hearing by commission.**
   Where there was pending before the state Public Service Commission a proceeding to determine the legality of electric power rates, a United States court can restrain the power company from collecting the rates of the new schedule without giving bond to refund the amount, if that question was not presented to the Public Service Commission, though it might have been.

In Equity. Suit by the Carpenter Steel Company against the Metropolitan-Edison Company. On motion by the plaintiff for a restraining order. Order granted.

John A. Keppleman, of Reading, Pa., for plaintiff.

Henry P. Keiser, of Reading, Pa., S. P. Light, of Lebanon, Pa., and Ralph J. Baker, of Harrisburg, Pa., for defendant.

DICKINSON, District Judge. This cause presents a number of interesting questions. They are of more interest, perhaps, than of practical importance. The real controversy can be best presented by a contrast of what, under the paper book requirements of the Supreme Court of the state, would be the statements by the respective parties of the question involved; but the objection to doing this is that, as that question is stated, so will the answer be. To give either is in consequence to determine the cause; to state both is to state nothing. This forces us to a statement of the subject of the controversy out of which we must get the question of law involved.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

From the viewpoint of the plaintiff the parties have a contract for the supply of power by defendant to plaintiff for a defined time and at an established rate. To assure a continuance of supply, if any bill rendered was in dispute, the contract provides that defendant shall not shut off power because of nonpayment, thus limiting its right to the case of the nonpayment of an undisputed bill. In reliance on this contract, plaintiff re-equipped its plant, so that it became wholly and helplessly dependent upon the defendant for the running of its mill. Following a change of management, the defendant filed a new tariff or schedule of rates of charge for service, in accordance with the laws of Pennsylvania establishing a Public Service Commission for the state. The effect of this (assuming it to be at once effective) was to largely increase the cost of the service to the plaintiff, as provided in the contract. The defendant presented bills, in accordance with the increased rates, and demanded payment. The question of what rate the defendant may lawfully charge is before the Public Service Commission, and as yet undetermined. Disputes arose between plaintiff and defendant over the bills rendered. This dispute was, for the time being, adjusted by an arrangement under which the plaintiff paid the bills as rendered, upon receiving the refunding bond of the defendant to return the part of the amount in dispute to which it could not lay just claim.

The defendant, after complying with this second agreement for several months, refused to longer comply, and served notice upon plaintiff that service would be discontinued unless plaintiff paid the bills as rendered, and that no refunding bond would be given. Plaintiff thereupon, having the right so to do, has applied to this court for relief against the irreparable damage with which it is threatened. It has accompanied its prayer for relief with the expression of its willingness to assure the defendant against the possibility of loss by paying the undisputed part of the bill, and by giving a bond, with any condition deemed to be proper to assure payment of all found to be payable, and, as an alternative, its willingness also to pay the bills as rendered upon being given a like bond that the excess of the sums paid beyond what is due and owing shall be refunded. The strength of the appeal thus made on the showing made is felt.

From the viewpoint of the defendant, however, the plaintiff should be denied all relief. The ground of the denial of the right to relief is not based upon any denial of the fact situation, except in the particular that the only dispute between the parties (with respect to the main controversy) is one over the rates of service, and as the defendant is a public utility corporation, it is subject to the control and must obey the commands of the Public Service Commission in respect thereto, and that this commission has, under the laws of Pennsylvania, full and exclusive jurisdiction of the subject-matter and of the parties (to which jurisdiction the present plaintiff has submitted itself), and that no court has any power to or should interfere with, or do anything which might interrupt, the orderly proceedings before that chosen tribunal.

It is further asserted (although this is denied by the plaintiff) that the Public Service Commission is possessed of the legal power to grant to the plaintiff the relief which it asks to have awarded by this court. It is not pretended, however, that any such relief has in fact been prayed, or that the question before us is among the questions pending before the commission.

[1] These opposing statements, so far as they are in opposition, bring into the light the question before us. It is at once apparent that the question is a very narrow one, although one to be determined on very broad grounds. Aside from any questions of rights, either legal or equitable, or of the power and jurisdiction of courts, the policy of law which controls or should control public utility corporations in what may be called their relations to the public is peculiarly a domestic policy, to be determined by the state concerned and to be enforced as so determined.

[2] Moreover, whether the Public Service Commission is an administrative department of the state government, or whether it is possessed of judicial powers and functions, and in this respect and to this extent is a court, if there was pending before it as a tribunal, with power to determine it, a question afterwards submitted to a court of the United States, the latter would not stop to inquire into powers and jurisdiction, but would promptly refuse to interfere, or do anything which might lead to a possible conflict of jurisdiction, leaving the parties to the jurisdiction first invoked, and to their right of removal or appeal to the courts of the United States, or whatever other rights they had.

If, therefore, there is in the instant case anything which is before the Public Service Commission peculiarly within its powers and functions to determine, that comity, which properly has a place in the relations of all courts, departments of government, and tribunals with each other, and which the relations between the United States and the states make almost a necessity, commands us to refuse to determine the same cause or question.

[3] Of course, if a right of a citizen of the United States is involved, and he has the further right to invoke the powers and process of a court of the United States to defend or enforce his right, all considerations of comity must give way to our duty to accord him his rights.

Just here is to be found the touchstone of the instant case. Counsel for defendant have compressed into a sentence everything there is to be said, when they say that the whole controversy between these parties is a question of rates. If it is, counsel for plaintiff admits he is out of this court and before the commission. Paradoxical as it sounds, however, there may be a controversy over rates without involving any question of rates, in the sense in which the commission deals with the subject.

There is a helpful analogy in cases dealing with what the United States Public Service Commission may do and what the courts cannot do. The cases of Texas & P. R. Co. v. Abilene, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, Texas & P. R. Co. v. American, 234 U. S. 138, 34 Sup. Ct. 885, 58 L. Ed. 1255, and Gimbel Brothers v. Barrett (D. C.) 215 Fed. 1004, afford us an illustration. The case of a dispute over the payment of a bill for service at the

tariff rate, in the sense of whether it has been in fact paid or not, affords us another illustration. A bill to enjoin a public utility corporation from bringing an action at law to enforce payment of a claim, based upon service according to a tariff, is another illustration. The test is what the court is asked to determine. To make good their contention, counsel for defendant insist that this court is asked to find that the proper rate of charge for service in this case is less than the tariff rate, and that we can make no such finding.

Counsel for plaintiff admits the conclusion, but disputes the premise. We are down, therefore, to what is a fact finding. Defendant asserts there is no contract rate of charge. The rate is whatever the commission fixes, and until thus fixed is whatever the tariff sets forth. However this may be, we are not asked to decide otherwise, because this, for the purposes of this case, is conceded. How, then, can the rate be the thing in controversy? The real controversy is not over any right other than the right to a remedy. Defendant is asserting and threatening to enforce its claimed right in defiance of its contract not to so enforce a disputed demand.

The question now presented turns upon whether it has such right? The Public Service Commission has not assumed jurisdiction of this cause for the purpose of determining this question. Why may not this court determine it? The commission has control of public utility corporations in a sense in which it has not control of those dealing with them, so that the situation is not quite reversible, but to reverse the question is helpful nevertheless. Could not this court (assuming its jurisdiction in other respects) entertain the suit of this defendant against this plaintiff for the payment of this very bill now in dispute? The question of rate would then be involved precisely to the extent to which it now is. If the answer is that the commission has no power to give judgment against the customer, but that the commission has the power (as asserted by defendant and denied by plaintiff) to give plaintiff the relief prayed, this is met by the retort that, granted the commission has jurisdiction, it has not asserted it, and, as this court has concurrent jurisdiction, the doctrine applies that the court which first assumes jurisdiction should retain it, and the other should not interpose.

The question of the powers possessed by the commission is a question of the meaning of a state statute, which properly is to be determined by the state courts and left to their determination. We must, however, decide the question of our own jurisdiction, and, if we have it, then the question becomes one of its exercise. If the commission had assumed jurisdiction of the cause, we would refuse to do so, following the almost universal rule of comity.

[4] As, however, the commission has not before it the question now presented, and as the question of rates which is before the commission is not here involved, the conclusion follows that we should entertain the complaint and make the necessary orders for its determination.

We find ourselves in accord with the propositions of law advanced by counsel for defendant in the very clear-cut and helpful brief sub-

mitted by them. The processes of thought by which counsel for the defendant reach the conclusion they reach affords a good illustration of the truth of the observation at the beginning of this opinion. The answer to the question addressed to the mind, whatever it is, is reached without difficulty. The real controversy is over the question properly so addressed. If the real question involved is the question stated in defendant's paper book, the answer which they make to it must be accepted. If, on the other hand, the real question is that hereinbefore presented, the answer is as readily reached. As before stated, the cause is won or lost in determining what the question is which is to be decided. If the real question before us is one of a determination of tariff or schedule rates, it is to all intents and purposes conceded by the plaintiff that the motion now made should be denied. If, however, there is no controversy over the principle for which Armour v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, and Oakmont v. Suburban, 9 Pa. Corp. Rep. 49, are cited, the principle need not be discussed.

It is also unproductive of aid to us to enter upon the inquiry of whether the Public Service Commission has power to grant the relief now asked. Conceding that the commission does possess this power, if it has not been asked to exercise it, and this court also has jurisdiction of the instant cause, there is presented the situation of concurrent jurisdiction in two courts. The doctrine then applicable is not one of jurisdiction, but of comity, and the rule almost universally followed is that the court first asked to exercise the concurrent power should be left undisturbed in its exercise.

As our finding is that this court has jurisdiction of the cause now presented, and as it is the right of the plaintiff to invoke our jurisdiction, we cannot refuse to exercise it. This brings us to the technical motion now before us. We have not had an opportunity to examine the record. Our ruling, however, is made on the understanding that a bill has been filed, and that the motion now before us is one for a restraining order pendente lite.

The order now made is to be one in the following alternative form:

(1) Upon the defendant tendering to the plaintiff an approved bond, conditioned for the return of all moneys to which it may be determined the defendant is not entitled, the motion for a restraining order is denied.

(2) Should defendant, for any reason, refuse or fail to give such bond, the restraining order may issue upon a like bond being given by plaintiff to defendant, conditioned for the payment of all moneys to which the defendant may hereafter be shown to be entitled.

(3) A restraining order to issue ad interim, awaiting the entry of a formal order, as above indicated.

In order to give, for appellate purposes, definiteness of date to the order made, no order other than the ad interim order is now made, but leave is granted to counsel to submit a draft of an order, in accordance with this opinion; the court retaining jurisdiction to determine the form of this order, should counsel be unable to agree thereon.