## J. C. FAMECHON COMPANY v. WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS, OPERATING THE GREAT NORTHERN RAILROAD.[1]

December 23, 1921.

No. 22,465.

**Carrier—extra charge for refrigerator car—propriety of charge not for court.**

The published freight tariffs for line haul of potatoes between two points was $181.69. Another published tariff authorized an extra charge of $5 when the shipper uses a refrigerator or other insulated car. The question of the propriety of this extra charge is one upon which it is the province of the Interstate Commerce Commission to pass and the courts cannot in this action interfere with the rates fixed.

April 28, 1922.

**Finding made extra charge for carrying potatoes in refrigerator car unauthorized.**

On an amended record, and upon a finding that a refrigerator or other insulated car is the only proper and suitable car in which to transport potatoes during the entire year, it is *held* that the use of such equipment must be included in the line haul charge and a separate charge therefor is not authorized.

[1]Reported in 185 N. W. 941, 187 N. W. 974.

Action in the municipal court of Minneapolis to recover an overcharge of $5 paid by plaintiff on a shipment of potatoes. The case was tried before Charles L. Smith, J., who when plaintiff rested denied defendant's motion to dismiss the action on the plaintiff's evidence, on the ground the court was without jurisdiction in the case and on the further ground that the evidence did not sustain the allegations of the complaint, made findings and ordered judgment in favor of plaintiff. From an order denying his motion for amended findings and conclusions or for a new trial, defendant appealed. Affirmed on amended record.

*Dille, Hoke, Krause & Faegre, F. C. Dorety* and *R. J. Hagman,* for appellant.

*Charles Burke Elliott* and *George H. Smith,* for respondent.

HALLAM, J.

This is an action to recover a rental charge of $5 which was paid by the plaintiff to defendant for the use of a refrigerator car furnished to and used by plaintiff for the shipment on February 25, 1919, of a carload of potatoes from Page, North Dakota, to Chicago via Minneapolis. At Minneapolis the car was reconsigned to Galena, Kansas. The shipment weighed 36,000 pounds and the published tariff was 49 cents per cwt., making the freight, with the war tax added, $181.69. An additional charge of $5 was exacted for use of a refrigerator car, and this, with war tax, increased the amount exacted to $186.84. The court found for plaintiff and defendant appeals.

The five-dollar charge was exacted by virtue of a tariff which reads as follows:

*"Rental charges on insulated cars*—When shipper uses a refrigerator or other insulated car during the period from October 15th to the following April 15th, both dates inclusive, for loading with potatoes or other vegetables, classified as taking Class C rates in Western Classification in straight or mixed carloads to be heated by him or to be moved without heat, a charge of five dollars per car per trip will be made for the use of the car."

The contention of plaintiff is that the exaction of the rental charge was illegal, or, in other words, that after establishing a line haul rate, the Interstate Commerce Commission has no authority to authorize a separate charge for the use of a refrigerator or other insulated car. The theory is in substance this: That the rate for the line haul of this commodity was intended to cover compensation for the use of a proper car for the carriage of the particular commodity, that a refrigerator or insulated car was the only proper car for the carriage of potatoes, and that the tariff for the line haul was therefore predicated upon the use of a refrigerator or other insulated car and no additional charge could be made therefor.

The fact is the Interstate Commerce Commission has authorized one rate for shipment in other than refrigerator or insulated cars and what is in effect a higher rate for shipment in such cars. We are asked to hold that the commission has no power to authorize a higher rate for the latter service.

It is settled law that when freight is offered for shipment the carrier is bound to furnish proper facilities for transportation of the freight offered. Brennisen v. Pennsylvania R. Co. 100 Minn. 102, 110 N. W. 362, 10 Ann. Cas. 169; Hutchinson, Carriers, § 509.

It is the province of the courts and not of the Interstate Commerce Commission to determine what is the proper type of car for any particular shipment. U. S. v. Pennsylvania R. Co. 242 U. S. 208, 37 Sup. Ct. 95, 61 L. ed. 251; Hutchinson, Carriers, § 505.

The fixing and adjustment of rates, however, come within the province of the Interstate Commerce Commission and the courts cannot interfere with the rates fixed by order of the commission, unless it is made plainly to appear that those orders are void. Atchison, T. & S. F. Ry. Co. v. U. S. 232 U. S. 199, 221, 34 Sup. Ct. 291, 58 L. ed. 568.

As we view the case the question here involved is one of adjustment of rates. The court found that "during the months of February and March, 1919, a refrigerator or other insulated car was the only proper and suitable car in which to transport potatoes from Minnesota to any place beyond the boundaries of the state of Minnesota." There is no finding that such cars are the only suitable

cars for transportation of potatoes during the whole year, and, although there was some testimony to that effect, we cannot for obvious reasons assume such to be the fact.

Several decisions of the Interstate Commerce Commission are enlightening:

In Rental Charges for Insulated Cars, 31 I. C. C. 255, 257 (June, 1914), a charge of $5 for use of a refrigerator car in the transportation of potatoes was sustained. The commission said: "The record in this proceeding shows that in the beginning potatoes moved in box cars during the fall months and the rates were fixed on the basis of such movement; they now move largely in refrigerator cars and during the winter months. There is nothing of record to warrant the commission in finding that the proposed charge is either unjust, unreasonable, or unduly discriminatory."

In Northern Potato Traffic Assn. v. Chicago & A. R. Co. 44 I. C. C. 426, 431 (April, 1917), there was involved the propriety of a similar charge for use of refrigerator cars in shipment of potatoes. It was said the record showed that potatoes have moved for years in refrigerator cars when such cars were available and that the statement in 31 I. C. C. "that the rates were originally made on the theory that the traffic would move in box cars was erroneous." The commission further said, however [p. 433]: "Complainant stresses the fact that the duty rests upon a common carrier to furnish suitable equipment and insists that the refrigerator car is the only appropriate equipment for the carriage of potatoes. But potatoes may be, and are, transported in box and stock cars, and the main purpose in using the refrigerator car is to protect the potatoes. The duty does not rest upon the carrier to furnish special equipment if it does provide some method by which the commodity can be protected from the cold during the winter months. We are not persuaded by the present record that the rental charge during the winter season is shown to be unreasonable." The charge was held discriminatory on other grounds.

In In the Matter of Private Cars, 51 I. C. C. 652, 709 (July, 1918), a proceeding of inquiry into rules, regulations and practices govern-

ing the operation of private cars, the commission apparently re- verted to the rule of 31 I. C. C. 255, and further said "a charge in addition to freight rates should not be made for furnishing to ship- pers refrigerator, tank, or other special type of car, * * * un- less the freight rates are predicated on the transportation in another type of car less expensive and not so difficult to operate."

Perishable Freight Investigation, 56 I. C. C. 449 (Feb. 1920), departs from the rule recommended in 31 I. C. C. 255, and, as "a development of this rule," lays down a rule which "amounts to say- ing that no special charge should be imposed when the line haul rates are or should be predicated upon insulated car movement," and specifically holds "a carrier is entitled to reasonable compensa- tion for the service which it performs, and, if it is obliged to provide special equipment for the safe transportation of any particular class of freight, it may properly give that fact due weight in fixing its charges. Where insulated cars are necessary for the carriage of perishable freight, compensation may be secured in one of two ways—either through the line-haul rate, or by levying a separate charge. In our opinion the first method is desirable, for simplicity and convenience and because it accords with present practice, when special equipment is ordinarily required for safe transportation throughout the year or a greater portion of the year; but a separate charge is preferable when the reverse is the case, both to avoid unlawful discrimination and also to discourage the use of the more costly cars when they are not reasonably necessary." The tariff there under consideration was held not governed by these principles and was disapproved. See also Northern P. T. Assn. v. Great North- ern Ry. Co. 58 I. C. C. 360.

In every case where the question has arisen the Interstate Com- merce Commission has sustained the propriety of an additional charge for use of refrigerator or other insulated cars in the ship- ment of potatoes, though not always along the same line of reason- ing. If the principle of the latest decision above quoted is a correct one, it follows that the question involved in this case is one of ad- justment of rates and charges for transportation and within the province of the Interstate Commerce Commission and that the tariff

provision cannot be held void. We are of the opinion that the principle as stated is correct, and, unless it may be said that the question is barred by the court's findings, we are also of the opinion that for the reasons stated in Northern Potato Traffic Assn. v. Chicago & A. R. R. Co. 44 I. C. C. 426, 431, above cited, it was within the province of the Interstate Commerce Commission to allow a charge for the use of this form of special equipment for the shipment of potatoes. Order reversed.

On April 28, 1922, the following opinion was filed:

HALLAM, J.

The former decision in this case was made on the record then presented. The decision of the trial court as filed and as returned to this court contained the finding of fact that "during the months of February and March, 1919, a refrigerator or other insulated car was the only proper and suitable car in which to transport potatoes from Minnesota to any place beyond the boundaries of the state of Minnesota." We are now advised that, by stipulation not filed and not made part of the record or return, it was stipulated, with the consent and approval of the trial court, that the finding quoted should be amended by striking out the words "months of February and March, 1919," and substituting in lieu thereof the words "entire year," but that through inadvertence this stipulation and approval of the court were not made part of the record, and a nunc pro tunc order has since been entered amending the findings to conform to said stipulation. Both parties agree that on this rehearing this court should consider the record as so amended.

Naturally the defendant is not in a position to question this finding, and we are obliged to assume that the evidence sustains it. In the former opinion we followed the decision of the Interstate Commerce Commission in Perishable Freight Investigation, 56 I. C. C. 449, to the effect that, where refrigerator or other insulated cars are ordinarily required for safe transportation throughout the year, the charge for the use of such a car should be included in the line haul charge, and a separate charge therefor is unauthorized, but where the use of such special equipment is required only a portion of the

year, a separate charge may be made for the use of the specially equipped car. The amendment of the record is therefore in a vital particular and requires a reversal of our former decision and an affirmance of the order of the trial court.

Order affirmed.