# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

## CHICAGO, B. & Q. R. CO. v. MERRIAM & MILLARD CO. *

(Circuit Court of Appeals, Eighth Circuit. March 28, 1924.)

### No. 6281.

1. Commerce ☞89—Action to recover difference between published rate and reasonable rate cannot be maintained until Commission fixes right to reparation.

Until the Interstate Commerce Commission has, as an official body of technical experts, declared the existence of a right to reparation because of shipments of grain made after its finding that the existing rate was excessive and before the effective date of a subsequent order establishing a lower rate, by some order fixing a right to such reparation, an action to recover the difference between the published tariff rate and the reasonable rate may not be maintained, in view of Interstate Commerce Act, §§ 9, 15 (Comp. St. §§ 8573, 8583).

2. Carriers ☞30—Published tariff rate held only lawful rate.

The duly filed and published tariff rate, while it is in force, is the only lawful rate.

3. Carriers ☞31—Report and opinion of Interstate Commerce Commission cannot change tariff rate.

A report and opinion of the Interstate Commerce Commission cannot annul or change an existing tariff rate, in view of Interstate Commerce Act, § 15 (Comp. St. § 8583), requiring any change of rates made by the Commission to be made, not by report, finding, or opinion, but by an order to carrier to cease collecting the existing rate, to take effect not less than thirty days after the date of the order.

4. Commerce ☞89—Maintenance of suit to recover damages for collection of unreasonable rate depends on prior action by Interstate Commerce Commission.

Maintenance of a suit to recover damages from a carrier because of the collection of an unreasonable rate, in violation of the Act to Regulate Commerce (Comp. St. § 8563 et seq.), depends on prior action by the Interstate Commerce Commission as a foundation for it whereby a right to reparation has been decided.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by the Merriam & Millard Company against the Chicago, Burlington & Quincy Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

297 F.—1    *Certiorari denied 44 Sup. Ct. 637, 68 L. Ed. —.

Kenneth F. Burgess, of Chicago, Ill., and J. W. Weingarten, of Omaha, Neb. (Byron Clark and Jesse L. Root, both of Omaha, Neb., on the brief), for plaintiff in error.

William A. Schall, of Omaha, Neb. (Edward P. Smith, Francis S. Howell, Warren H. Howard, and Frank E. Sheehan, all of Omaha, Neb., on the brief), for defendant in error.

E. R. Morrison and Howard L. Hassler, both of Kansas City, Mo., amici curiæ.

Before SANBORN, Circuit Judge, and TRIEBER and MUNGER, District Judges.

MUNGER, District Judge. [1] This suit was brought to recover the difference between the tariff rate and what is alleged to have been a reasonable rate, on certain grains shipped from points in Nebraska and South Dakota to points in Idaho, Montana, and in the three states bordering on the Pacific Ocean.

Rates on these grains of 81½ cents per hundred pounds had been duly made as authorized by the Interstate Commerce Commission in 1920. Ex parte No. 74, 58 Interst. Com. Comr. R. 220. These rates had been set forth in printed tariffs filed with the Interstate Commerce Commission and published and posted as required by law. Thereafter the Interstate Commerce Commission, hereafter called Commission, undertook an investigation of these rates and on October 20, 1921, it made and filed an extensive report (Rates on Grain, Grain Products and Hay, 64 Interst. Com. Comr. R. 85) dealing with many features of the situation. The material portions of that report are as follows:

"We find that the present rates on wheat and hay involved herein will be for the future unjust and unreasonable to the extent that they may individually include more than one-half of the increases authorized in Ex parte No. 74. We further find that the present rates on coarse grains will be for the future unjust and unreasonable to the extent that they may exceed rates 10 per cent. less than those herein prescribed as just and reasonable on wheat from and to the same points. * * *

"We further find that the rates on commodities recognized as products of the above commodities will be for the future unjust and unreasonable to the extent that they exceed rates that would be made by continuing the relationships that now exist, except that where differentials are observed and were subjected to the percentage increases the differentials should be reduced proportionately with the rates. * * *

"An order will be entered in accordance with our findings if that becomes necessary. We shall expect the reductions to be made as soon as practicable and not later than November 20, 1921."

No order was made in that proceeding by the Commission until November 21, 1921, when one was made which recited that the Commission had entered upon an investigation by an order dated July 11, 1921, and had rendered its report on October 20, 1921. It referred to and made the report a part of the order and recited that the cause had then come on for further consideration and proceeded as follows:

"It is ordered, that the common carriers by railroad, parties to this proceeding, named in Appendix I, according as they respectively participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before December 27, 1921, and thereafter to abstain from publishing, demanding or collecting any rates for the interstate transportation of

grain, grain products and hay, in carloads, within the territory described below, in excess of those hereinafter prescribed."

By this order the applicable rate on these grains was reduced to 64 cents per hundred pounds. The shipments of grain involved in this suit are set forth in four causes of action. In the first, the plaintiff seeks as the shipper of the grain and in the others as the assignee of other shippers. The dates of delivery of the several cars to the carrier and of the billing by the carrier are alleged to be stated in exhibits attached to the petition and made a part of it. The exhibits show that some of these cars were delivered to the carrier before December 27, 1921, and that some were delivered in December, but after that date. The answer alleged that the plaintiff and his "assignors made said shipments in December prior to December 27, 1921," but otherwise denied the allegations of the petition. The reply denies the allegations in the answer except such as admitted the allegations of the petition. There was a trial to a jury. No evidence was offered to show the date of the delivery of any of these cars to the carrier. The allegation of the answer supplied that proof as to cars alleged to have been shipped before December 27, 1921, but its denials placed on the plaintiff the burden of proving shipments made on and after that date, and as no proof was offered, the only shipments now in question are those made in December, but prior to December 27, 1921.

The payment of a rate of 81½ cents per hundred pounds to the carrier for the shipment of this grain was admitted. The petition sought a recovery for the difference between the amount of freight paid at the rate of 81½ cents per hundred pounds and the rate of 64 cents per hundred pounds, alleging that the rate paid was unlawful, unjust, and unreasonable, to the extent that it exceeded 64 cents per hundred pounds. At the close of the testimony there was a motion for a directed verdict made on behalf of each of the parties, and the court directed a verdict for the plaintiff for the full amount of its claim. The chief questions presented by this proceeding in error are the giving of the peremptory instruction in favor of the plaintiff, and the refusal to direct a verdict for the defendant, and the determination of those questions in this case depends on the proper rate applicable to the shipments made before December 27, 1921.

[2, 3] The claim that the rate was unlawful cannot be sustained. The duly filed and published tariff rate, while it was in force, was the only lawful rate. Penna. R. R. Co. v. International Coal Co., 230 U. S. 184, 197, 33 Sup. Ct. 893, 57 L. Ed. 1446; Atchison, etc., Ry. Co. v. Robinson, 233 U. S. 173, 181, 34 Sup. Ct. 556, 58 L. Ed. 901; Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 163, 43 Sup. Ct. 47, 67 L. Ed. 183. It is not claimed that the carrier had made any change of these tariff rates at the time of these shipments. The report and opinion of the Commission filed on October 20, 1921, did not purport to and could not annul or change the existing tariff rate. American Sugar Refining Co. v. Delaware, L. & W. R. Co., 207 Fed. 733, 741, 743, 125 C. C. A. 251; North American Co. v. St. Louis & S. F. R. Co. (D. C.) 288 Fed. 612, 618. The rule is stated in Mitchell Coal Co. v. Penna. R. R. Co., 230 U. S. 247, 257, 33 Sup. Ct. 916, 921 (57 L. Ed. 1472):

"But since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable and therefore illegal and prohibited."

Section 15 of the Interstate Commerce Act (Comp St. § 8583) required that any change of the rates made by the Commission should be made, not by a report, finding, or opinion, but by an order to the carrier to cease and desist from collection of the rate, to take effect not less than thirty days after the date of the order. The first order that was made directed the carrier to abstain from collecting the tariff rate of 81½ cents per hundred pounds on and after December 27, 1921, a date which was subsequent to the shipments involved. Subsequent orders of the Commission are said to have been made extending the date of compliance with the order, reopening the case for rehearing, and vacating prior findings (Rates on Grain, Grain Products and Hay, 80 Interst. Com. Comr. R. 362), but are not deemed material in this controversy.

The defendant in error conceded that the 81½ cent rate was the published rate, but makes the further claim that it is entitled to recover in this action because that rate was unreasonable, to the extent that it exceeded a rate of 64 cents per hundred pounds. It concedes also that this question of the reasonableness of the rate was primarily for the determination of the Commission, but it claims that the Commission did determine it, by its finding, report, and opinion of October 20, 1921, and that it thereby became entitled to claim reparation, without further resort to the Commission by it, or by any other shipper, and to recover the amount of such reparation in this action. The finding of the Commission was that the rates would be for the future unjust and unreasonable. If this finding may be treated as a declaration that the rates would be unreasonable after that date and not after the date at which the subsequent order should take effect, such a finding would, for all practical purposes, be an order that the rates should go into effect immediately after the findings are filed. While the Interstate Commerce Law requires that an order shall be made and requires that the order shall be served upon the carrier, and provides that the order shall not take effect in less than 30 days, these requirements would be barren of importance if shippers are entitled to recover reparation on all shipments made after the findings and report are filed on the basis of the new rate declared in such finding and report to be just and reasonable. The Commission has recognized this difficulty in Arlington Heights Fruit Exchange Co. v. Southern Pac. Co., 39 Interst. Com. Comr. R. 88, 93, a case wherein it had held in its report that a rate was unreasonable, and had fixed a date for compliance with a reduction of the rate. In considering a claim for reparation on shipments made before the effective date of its order, the Commission said:

"By section 15 our order cannot take effect until after a reasonable time, which shall in no instance be less than 30 days after the service of the order. To award reparation between the date of service of the order and its effective date, therefore, would in substance be to disregard this statutory restriction and to require that the rates prescribed go into effect before the

statutory period. Our finding was not, nor do we think it should have been, that the $7.50 charge should become effective before June 15, 1911. For this reason we are of opinion that no reparation should be made on these shipments."

If every finding and opinion by the Commission declaring a rate, charge, or practice of a carrier unjust, or unreasonable for a past, present, or future time implies a final determination that the shippers affected are entitled to reparation as to shipments made at the period stated, then it is needless for any one claiming damages by reason of the carrier's act to make complaint to the Commission for reparation, in accordance with the permission granted by section 9 of the act (Comp. St. § 8573), and every shipper is relieved from the necessity of pleading or proof before the Commission of a right to reparation, because he may at once bring suit in court, without any specific order by the Commission that he, or any one so situated, is entitled to reparation. This has not been the theory on which the Commission has acted. In National Petroleum Ass'n v. M., K. & T. Ry. Co., 47 Interst. Com. Comr. R. 355, 363, the Commission said:

"This contention is one that has been sharply discussed by counsel in a number of cases before us in which reparation has been denied on the general theory that an award of damages with respect to shipments in the past does not necessarily follow as a matter of law upon a finding that the rate or rates under consideration is or are unreasonable. The theory of the Commission has been that it may award or deny reparation as substantial justice may require according to the special facts and circumstances of each particular case. Our general powers in this particular were recently discussed at some length in D., L. & W. Coal Co. v. D., L. & W. R. R. Co., 46 I. C. C., 506, 508, 509, and need not be again considered here. It will suffice to say that in a long line of cases, cited in the proceeding just mentioned, where general rate structures were under examination, the Commission, holding that such a course was within its established powers, denied awards of reparation because, on the facts appearing in each case, the Commission was of the opinion that reparation was not warranted."

[4] Nor does it seem to have been the theory upon which reparation has been awarded by the courts. No decision by the Supreme Court of the United States or by any of the Circuit Courts of Appeal has been brought to our attention wherein a judgment for damages has been awarded by way of reparation for the exaction of unreasonable rates, except where an allowance of reparation had been previously made by the Commission in that or a similar case involving the same questions. Since the decision in Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 440, 441, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, it has been the established rule that the maintenance of a suit in a court to recover damages from a carrier because of the collection of an unreasonable rate in violation of the Act to Regulate Commerce depends on prior action by the Commission as a foundation for it, whereby a right to reparation has been decided. The case of Robinson v. Balt. & Ohio R. R., 222 U. S. 506, 509, 511, 512, 32 Sup. Ct. 114, 56 L. Ed. 288, was an action by a shipper against a carrier to recover reparation for freight paid in excess of a rate which the Commission had found, in an opinion, to be just. Glade Coal Co. v. B. & O. R. R. Co., 10 Interst. Com. Comr. R. 226. In that opinion, the Commission had declared that a provision in the carrier's tariff

in force after January 26, 1903, charging 50 cents more per ton as freight on coal loaded into cars from wagons, than was chargeable for coal loaded from a tipple, was unjust and unduly discriminatory as against all other shippers of coal. Robinson brought the suit to recover this excess of 50 cents per ton on his shipments of coal loaded from wagons in February, March, and May, 1903, and after this tariff rate had been made. The court stated that the question was whether Robinson could recover in the absence of an order by the Commission finding the additional rate of 50 cents per ton was unjust and that it was plain that the Act to Regulate Commerce required an investigation and order by the Commission as a prerequisite to the right to seek reparation in the courts. The opinion also declared that the opinion of the Commission was not sufficient foundation for the suit, because it contained no direction or finding as to what, if any, reparation should be made. It may be observed that the exact amount of the rate of undue exaction was stated in the opinion of the Commission, to wit, 50 cents per ton of coal shipped, so that the plaintiff's damages could have been fixed by a simple computation, if the opinion of the Commission and its declaration and finding that the rate was unreasonable and discriminatory had had the effect of an order of reparation made by it. In American Sugar Refining Co. v. Delaware, L. & W. R. Co., 207 Fed. 733, 741, 125 C. C. A. 251, the sugar company sought recovery of a portion of a freight rate paid on shipments of sugar. The question involved was the effect of an opinion by the Commission (In the Matter of Allowances for Transfer of Sugar, 14 Interst. Com. Comr. R. 619) in which it had found the challenged portion of the rate to be unlawful. No order had been issued, but the Commission had stated its expectation that the carriers would conform their tariffs to the principles stated in the opinion. The decision of the court was that the mere opinion of the Commission did not have the effect to change the tariff rate, without an order made by the Commission, and until the rate was so changed, in pursuance of an order, the parties' rights were controlled by the tariff rate.

A number of cases are cited by the plaintiff, but in our view they do not determine the question presented in this case. Particular reliance seems to be placed upon the cases of National Pole Co. v. Chicago & N. W. Ry. Co., 211 Fed. 65, 127 C. C. A. 561, and Phillips v. Grand Trunk Ry., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774. In National Pole Co. v. Chicago & N. W. Ry. Co., 211 Fed. 65, 67, 72, 127 C. C. A. 561, the carrier's only contention was that each claimant must obtain an order of the Commission entitling him to reparation before he could maintain a suit for his damages. The Commission had determined the question of reparation in another proceeding by a shipper similarly situated. Roper Lumber-Cedar Co. v. C. & N. W. Ry. Co., 16 Interst. Com. Comr. R. 382, 383. The court held that this determination inured to the benefit of the plaintiff, stating that the standard of justness had been fixed by the quasi legislative determination of the Commission.

In Phillips Co. v. Grand Trunk Ry., 236 U. S. 662, 664, 665, 35 Sup. Ct. 444, 59 L. Ed. 774, the plaintiff was defeated by the statute

of limitations, but before deciding that question, the court held untenable an objection of the carrier that the plaintiff, as a shipper, had not been a party to the proceedings before the Commission, because every shipper, by appropriate proceedings, was entitled to the benefit of that general order. But it also appears from the decision that the Commission had acted on a number of other claims of reparation, wherein the right to reparation had been declared. Such cases do not control the decision in this case, where no award of reparation has been made to any one.

The conclusion is that until the Commission has, as an official body of technical experts, declared the existence of a right to reparation because of shipments of grain made after its finding and opinion and before the effective date of its subsequent order, by some order fixing the right to such reparation, an action of this kind may not be maintained. The court erred in giving the instruction to the jury to return a verdict for the plaintiff and in refusing to give the instruction to return a verdict in favor of the defendant.

The judgment will be reversed, and a new trial ordered. ·