## J. C. FAMECHON CO. v. NORTHERN PAC. R. CO.

Circuit Court of Appeals, Eighth Circuit.
December 5, 1927.

No. 7536.

1. **Commerce ⬤═85(5)—Interstate Commerce Commission has full jurisdiction over form and arrangement of tariffs for railroads, and can allow charge to be separated into factors (Interstate Commerce Act, § 6, as amended [49 USCA § 6]).**

Interstate Commerce Commission has full jurisdiction over form and arrangement of tariffs for railroads, and can allow charges to be separated into any number of factors, under Interstate Commerce Act, § 6, as amended by Act June 29, 1906, § 2 (49 USCA § 6 [Comp. St. § 8569]).

2. **Commerce ⬤═89(5)—In shipper's action to recover charges exacted by carrier under interstate tariff, courts have jurisdiction without preliminary resort to Interstate Commerce Commission, in absence of question of fact or of administrative discretion.**

When, in action by shipper to recover charges exacted by carrier under interstate tariff, rights of parties depend entirely on legal construction of tariff, involving no question of fact, either in aid of construction or in other respects, and no question of administrative discretion, courts have jurisdiction, without preliminary resort to Interstate Commerce Commission.

3. **Commerce ⬤═85(5)—What constitutes fair charge for carrier's facilities and services is within Interstate Commerce Commission's discretion.**

What are proper rates for transportation and fair charges for facilities furnished and services rendered by carriers are all rate-making matters, committed to Interstate Commerce Commission, and within its discretion.

4. **Commerce ⬤═85(5)—What tariff includes is primarily determined by Interstate Commerce Commission.**

What tariff includes is matter primarily to be determined by Interstate Commerce Commission, in exercise of its power concerning tariffs, and authority to regulate conferred on it by statute.

5. **Commerce ⬤═89(5)—Action to recover from carrier extra charge for refrigerator car for potato shipment cannot be brought, without preliminary inquiry and ruling by Interstate Commerce Commission.**

Action by shipper to recover charges exacted by carrier under interstate tariff for use of refrigerator car, brought on ground that carrier was bound to furnish suitable transportation for potatoes shipped, cannot be brought without preliminary inquiry and ruling by Interstate Commerce Commission, since character of equipment which carrier must provide is problem directly concerning rate-making, and administrative in character.

6. **Carriers ⬤═30—Carrier may not depart from tariff and charges as filed and promulgated, until pronounced unreasonable or discriminatory (Interstate Commerce Act, § 6, as amended [49 USCA § 6]).**

Where tariff and charges are filed and promulgated under Interstate Commerce Act, § 6, as amended by Act June 29, 1906, § 2 (49 USCA § 6 [Comp. St. § 8569]), carrier may not depart from them until they are pronounced unreasonable or discriminatory by Interstate Commerce Commission.

7. **Commerce ⬤═95—Courts cannot disturb Interstate Commerce Commission's judgment on matters of fact within its province.**

Courts cannot substitute their judgment for that of Interstate Commerce Commission on matters of fact within province of such Commission.

8. **Carriers ⬤═40—Carrier must furnish suitable transportation for particular commodity, including refrigeration (Interstate Commerce Act, § 1 [49 USCA § 1]).**

Under Interstate Commerce Act, § 1 (49 USCA § 1 [Comp. St. § 8563]), common carrier is required to furnish shipper with cars suitable and proper for transportation of particular commodity, and this includes refrigeration.

In Error to the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Action by the J. C. Famechon Company against the Northern Pacific Railroad Company. Judgment of dismissal (11 F.[2d] 312), and plaintiff brings error. Affirmed.

Charles B. Elliott, of Minneapolis, Minn. (George H. Smith, of Minneapolis, Minn., on the brief), for plaintiff in error.

D. R. Frost, of St. Paul, Minn. (B. W. Scandrett and F. G. Dorety, both of St.

Paul, Minn., on the brief), for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and POLLOCK, District Judge.

VAN VALKENBURGH, Circuit Judge. On or about the 19th day of August, 1922, plaintiff in error filed, in the district court for the city of Minneapolis, a suit to recover an alleged overcharge of $5 per car upon 820 carloads of potatoes shipped by plaintiff in error, and received by defendant in error as initial carrier, between the dates of October 15, 1914, and April 15, 1922. These shipments were made, respectively, as set forth in the petition, at intervals throughout the years of 1915, 1916, 1917, 1920, 1921, and during the first 3½ months of 1922. The $5 charge per car, alleged to have been unlawfully exacted, was for the use of refrigerator cars in making these shipments of potatoes, which originated in Minnesota. On September 8, 1922, defendant in error filed petition and bond for removal, and the case was duly removed to the District Court of the United States for the District of Minnesota. A jury was waived by written stipulation, and trial to the court, sitting as a jury, resulted in a judgment of dismissal, to review which action of the trial court this writ is prosecuted.

From the admissions contained in the pleadings, and the evidence adduced, the court found the following facts:

"(1) That the plaintiff is, and at all times herein mentioned was, a corporation duly organized and existing and engaged in the business of shipping potatoes from various points in the state of Minnesota and other states to various places of destination in the Western, Southern, and other states. That the defendant is, and at all the times herein mentioned was, a corporation and a common carrier by railroad, subject to the act of Congress entitled An Act to Regulate Commerce, approved February 4, 1887, and amendments thereto.

"(2) That plaintiff made the nine carload shipments of potatoes described in Plaintiff's Exhibits A to J, both inclusive, which exhibits are by reference made a part of these special findings. That said shipments originated at stations on the railroad of defendant, and were duly transported by defendant and connecting railway companies to their destinations. That plaintiff ordered from defendant, and used for the shipments, refrigerator or insulated cars.

"(3) That the defendant, as initial carrier, received and transported all the shipments described in Plaintiff's Exhibits A to J, inclusive, upon the agreement and understanding that plaintiff would pay all lawful freight and other lawful charges on each shipment from point of origin to point of destination.

"(4) That all the shipments described in Plaintiff's Exhibits A to J, inclusive, moved under tariffs that were applicable to said shipments, and which defendant and the connecting railway companies that participated in the transportation had lawfully and duly filed with the Interstate Commerce Commission and published and posted, and said tariffs were the lawfully published and filed tariffs of the railway companies over the lines upon which said shipments moved. That the aforesaid tariffs named local, joint, and proportionate rates of transportation on potatoes in carloads in 'cents per 100 pounds' from the point of origin to the point of destination of each shipment referred to in Plaintiff's Exhibits A to J, inclusive. That said amount in 'cents per 100 pounds' is hereinafter referred to as the 'line-haul rate.' That said tariffs also published certain additional charges in cents per 100 pounds, effective on carload shipments during the 'cold weather period,' October 15th to the following April 15th, inclusive, for which, if the shipper elected to apply for and to load a car under 'carriers' protective service,' the carriers undertook to 'furnish artificial heat (when required) as protection against frost, freezing, or overheating, but only within the territory covered by the table of charges.' That it was provided that charges shown in said section upon 'carriers' protective service' were 'in addition to and independent of freight rates.' That said tariffs also provided that between the dates October 15th to the following April 15th, inclusive, shippers might apply for and load cars to be shipped under 'shipper's protective service,' and for car so ordered and loaded it was provided:

" 'Shipper's Protective Service.

" '(A) *Shippers to Provide False Floors, Stoves, Fuel, etc.*—When in the judgment of the shippers it is necessary (on account of the nature of the commodity and climatic conditions) to use temporary false flooring or lining or both, or stove (including fuel or fittings for same), they must be furnished and installed by the shipper and at his expense. Heaters and stoves must be of suitable design as to safety, and must be securely fastened and braced. * * *

" '(B) *Prewarming Cars.*—Carriers will not prewarm cars which are to be handled under this rule.

" '(C) *Attention to Fires.*—When a portable stove or heater is installed in car, the shipper must send a caretaker from point at which such stove or heater is installed, to look after fires at all points, including destination. * * *

" '(D) *Housing.*—Cars moving under this rule will not be placed in carriers' warming houses or round-houses at any point, including destination, for protection of contents against cold, nor for the removal of frost from the lading.'

"That said tariffs also provided for the free transportation, going, and returning, of each attendant in charge of one consignment (consisting of one or more carloads) between points within the limits of the option territory. That said tariffs also made provision for the return movement to shipper, if desired, of stoves or heaters, fittings therefor, false floors, or wooden linings which had been used in the movement of freight, the published charge for the return movement being 'one-half of fourth class freight rate.'

"That if the shipper ordered and used a box car under 'shipper's protective service' the tariff charge was the line-haul rate above described. That if the shipper selected 'shipper's protective service' and ordered and used a refrigerator or insulated car, the aforesaid tariffs published a charge of $5 per car per trip in addition to the line-haul rate. That the aforesaid tariffs made provision for said charge in an item that read:

" 'When shipper uses a refrigerator or other insulated car, during the period from October 15th to the following April 15th, both dates inclusive, for loading, with potatoes or other vegetables classified as taking class C rates in Western Classification, in straight or mixed carloads, to be heated by him or to move without heat, a charge of $5 per car per trip will be made for the use of the car.'

"(5) That the Interstate Commerce Commission, in proceedings duly instituted and after investigations, has found said tariff rule quoted in the foregoing finding not unreasonable, not unjust, and not otherwise unlawful, and that the plaintiff, prior to the commencement of this action, had made no application to said Commission to have said rule suspended or set aside, on the ground that it was unreasonable, unjust, or unlawful.

"(6) That the plaintiff paid to the defendant all its lawful freight and other lawful charges on each shipment described in Plaintiff's Exhibits A to J, inclusive, from point of origin to point of destination, including the $5 rental charge for the use of the refrigerator or other insulated car in which such shipments were made."

The conclusion of law found was in the following language:

"That the defendant is entitled to a judgment of dismissal and to its costs and disbursements herein."

Counsel for plaintiff in error adopt the following statement of the trial court as to the contentions of the parties:

"The plaintiff's theory is that the common-law duty of the defendant required it to furnish refrigerator or insulated cars for the shipment of potatoes, and, that being true, nothing could be legally collected by it beyond the line-haul rate, although required by its tariff. It also contends that the court must find that the line-haul rate was predicated upon the use of refrigerator or insulated cars. The defendant's position is that this court has no jurisdiction to determine the legality of the rental charge, because it involves questions which can only be considered and determined by the Interstate Commerce Commission."

They invoke the rule that a common carrier of freight is required to furnish a shipper with cars suitable and proper for the transportation of the particular commodity, and hold then that shipments of potatoes from Minnesota, at least between October and April of each year, require refrigerator or other insulated cars; that the $5 charge for the use of such cars is not an accessorial charge; that the line-haul rate filed pays fully for the transportation of the particular commodity, and for the use of all instrumentalities and facilities necessary for its proper carriage. It is insisted that the case involves construction of a tariff, and not an administrative finding whether it is unreasonable, unjust, or discriminatory; that for this reason the courts have jurisdiction, without previous reference to the Interstate Commerce Commission; that, in any event, the Commission has held that the $5 in question is not unreasonable nor discriminatory, and therefore that it is unnecessary that the question should again be submitted as a condition precedent to an action in the courts.

[1] The position of defendant in error is that the Interstate Commerce Commission is vested with comprehensive jurisdiction over all questions relating to rates and practices, and has authority to decide what type of car shall be supplied on payment of the line-

haul rate; that until there is an order for reparation (and none has been made) no court has jurisdiction to find that some portion of the tariff charges, collected under the clear and unambiguous terms of published tariffs, should be refunded. It must, of course, be conceded, as stated by counsel for defendant in error, that the Commission has full jurisdiction over the form and arrangement of tariffs. It can allow the charge to be separated into any number of factors.

[2-5] It is conclusively established that "when, in an action by a shipper to recover charges exacted by a carrier under an interstate tariff, the rights of the parties depend entirely upon a legal construction of the tariff, involving no question of fact either in aid of the construction or in other respect, and no question of administrative discretion, the courts have jurisdiction without preliminary resort to the Interstate Commerce Commission." Great Northern Ry. Co. et al. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; Skinner & Eddy Corporation v. United States et al., 249 U. S. 557–562, 39 S. Ct. 375, 63 L. Ed. 772; Turner Lumber Co. v. Chicago, M. & St. P. Ry., 271 U. S. 259, 46 S. Ct. 530, 70 L. Ed. 934; Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121–131, 35 S. Ct. 484, 59 L. Ed. 867.

It is also equally well settled that what are proper rates for transportation and fair charges for facilities furnished and services rendered are all rate-making matters, committed to the Commission and within its discretion. Atchison, Topeka & Santa Fé Railway Co. v. United States, 232 U. S. 199, 34 S. Ct. 291, 58 L. Ed. 568. Also that what a tariff includes is a matter primarily to be determined by the Commission, in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by statute. Texas & Pacific Ry. v. American Tie & Timber Co., 234 U. S. 138–146, 34 S. Ct. 885, 58 L. Ed. 1255. The character of equipment which the carrier must provide is a problem which directly concerns rate-making, is administrative in character, and on it there should be an appropriate inquiry by the Interstate Commerce Commission before being submitted to a court. Loomis v. Lehigh Valley R. R. Co., 240 U. S. 43, 36 S. Ct. 228, 60 L. Ed. 517.

In Texas & Pacific Railway Co. v. American Tie Co., the rule was thus stated:

"It is equally clear that the controversy as to whether the lumber tariff included crossties was one primarily to be determined by the Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statute. Indeed, we think it is indisputable that that subject is directly controlled by the authorities which establish that, for the preservation of the uniformity which it was the purpose of the Act to Regulate Commerce to secure, the courts may not, as an original question, exert authority over subjects which primarily come within the jurisdiction of the Commission."

And again, in Loomis v. Lehigh Valley R. R., supra, the Supreme Court said:

"An adequate consideration of the present controversy would require acquaintance with many intricate facts of transportation and a consequent appreciation of the practical effect of any attempt to define services covered by a carrier's published tariffs, or character of equipment which it must provide, or allowances which it may make to shippers for instrumentalities supplied and services rendered. In the last analysis the instant cause presents a problem which directly concerns rate-making, and is peculiarly administrative. Atchison, Topeka & Santa Fé Ry. v. United States, 232 U. S. 199, 220 [34 S. Ct. 291, 58 L. Ed. 568]. And the preservation of uniformity and prevention of discrimination render essential some appropriate ruling by the Interstate Commerce Commission before it may be submitted to a court. See Penna. R. R. v. Puritan Coal Co., supra, 128, 129 [35 S. Ct. 484]; Penna. R. R. v. Clark Coal Co., supra, pp. 469, 470 [35 S. Ct. 896]."

These cases are cited with approval in Great Northern Railway Co. v. Merchants' Elevator Co., supra. The distinction between cases in which the courts have jurisdiction without preliminary resort to the Interstate Commerce Commission and those which require primary resort to that commission is very clearly pointed out. Other cases shedding light upon the principles involved are: Los Angeles Switching Case, 234 U. S. 294, 34 S. Ct. 814, 58 L. Ed. 1319; Interstate Commerce Commission v. Stickney et al., 215 U. S. 98, 30 S. Ct. 66, 54 L. Ed. 112; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Chicago, B. & Q. R. R. Co. v. Merriam & Millard Co. (C. C. A. 8) 297 F. 1; Northern Pacific Ry. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221.

In the latter case (loc. cit. 483, 38 S. Ct. 553) it is said:

"The shipper, on the other hand, urges that the rule which requires such preliminary determination of administrative questions by the Commission applies only to those cases

where the question involved is whether a particular rate is unreasonable or whether a particular practice is discriminatory. But the rule is not so limited. It applies, likewise, to any practice of the carrier which gives rise to the application of a rate [citing cases]."

The position of plaintiff in error is that the charge for a refrigerator or insulated car is included as a matter of law within the line-haul rate; that any provision in the tariff that an extra charge may be made for such a car is beyond the power of the railroad to provide or of the Commission to approve; that it is within the power and duty of the court so to decide without preliminary action by the Commission. This would require technical knowledge and acquaintance with many intricate facts of transportation incidental to rate-making, presenting a problem peculiarly administrative in character and rendering essential some appropriate ruling of the Interstate Commerce Commission before submission to a court. It is pointed out in the cases cited that the question involves much confusion and conflict in testimony, and the exercise of administrative judgment. This is further made evident in the discussions of the Interstate Commerce Commission itself which have been brought to the attention of the court. Rental charges for insulated cars have several times been before the Commission. In Perishable Freight Investigation, 56 Interst. Com. Com'n R. 449, it is said:

"The questions presented have proved to be numerous, complex, and far-reaching; the magnitude of the investigation has made a comprehensive record difficult; and the advice which we now give will be without prejudice to any complaint that may later be brought or may now be under separate consideration." Loc. cit. 453.

"If, then, the line-haul rates may lawfully include compensation for protective service, it remains to determine to what extent, if at all, they do in fact include such compensation. * * * In some cases we have definitely found that the line-haul rate has included compensation for all or certain elements of protective service. In others, protestants have endeavored to show by process of comparison that such compensation must have been included. One great difficulty in dealing with this mass of conflicting evidence arises from the fact that railroad rate-making is not an exact science." Loc. cit. 465.

"Undoubtedly the best means of ensuring full justice, in dealing with proposals to establish separate charges for protective service where none have heretofore existed or covering elements of cost which have not been so covered hitherto, is to consider at the same time the level of the corresponding line-haul rates. Only in this way can it be determined whether the increase is reasonable which would result in the aggregate charge for haulage and protective service combined." Loc. cit. 466.

"In the present proceeding we found it necessary to exclude evidence in regard to the level of the line-haul rates, since it was obvious that an attempt to extend the investigation comprehensively into this field would have made any early response to the request of the Director General impossible. We are, therefore, unable to offer advice in regard to this matter, except to indicate the general rule which, in our opinion, should be followed. Separate charges for protective service should not be established where none are now maintained, or covering elements of cost which have not hitherto been included, unless the carriers are prepared to justify as reasonable, if complaint be made, the increase which would result in the aggregate charge for haulage and protective service combined." Loc. cit. 467.

"It is our conclusion that where insulated cars are ordinarily required for safe transportation throughout the year, or the greater part of the year, compensation should be secured through the line-haul rates. Where this is not the case a separate charge is preferable, but such a charge should be fairly proportioned to the extent and cost of the service. The evidence is insufficient to determine where the charges should be applied and what they should be upon this basis." Loc. cit. 614.

In Northern Potato Traffic Association v. Baltimore & Ohio Railroad Co. et al., 61 Interst. Com. Com'n R. 680, the finding was that the rental charge of $5 per car during the winter months in addition to the freight rate (line-haul charge) on the traffic involved was not unreasonable. The Commission had reached the same conclusion theretofore in Northern Potato Traffic Association v. Chicago & Alton R. R. Co., 44 Interst. Com. Com'n R. 426, and in Rental Charges for Insulated Cars, 31 Interst. Com. Com'n R. 255. The complexity of the problem presented is thus emphasized and the necessity of a finding by the Commission in the instant specific case is apparent.

[6, 7] This is the situation before us: Defendant in error has duly filed with the Commission a tariff governing the carriage of this

commodity. The charge is separated into factors. This is permissible. The statute provides—section 6 as amended by Act June 29, 1906, § 2 (34 Stat. 586, 587 [49 USCA § 6; Comp. St. § 8569])—that the Commission may determine and prescribe the form in which the schedules shall be prepared and arranged, and these schedules shall state separately all charges, and any rules or regulations which may determine any part or the aggregate of such rates and charges or the value of the service rendered. Accordingly there is what may be termed a line-haul rate for traffic requiring no extraordinary equipment or facilities, a "shippers' protective service," to be provided by the shippers, should they so elect, and a "carriers' protective service," in which, if a refrigerator or insulated car is ordered and used, a charge of $5 per car is made in addition to the line-haul rate. From this tariff and these charges, as filed and promulgated, the carrier may not depart. Until pronounced unreasonable or discriminatory by the Commission they must be observed. The carrier is entitled to have a finding that any particular charge is unreasonable and unjust before it is required to change it (Interstate Commerce Commission v. Stickney, 215 U. S. 98–105, 30 S. Ct. 66, 54 L. Ed. 112), and the courts cannot substitute their judgment for that of the Commission upon matters of fact within the province of the Commission (Los Angeles Switching Case, 234 U. S. 294, 34 S. Ct. 814, 58 L. Ed. 1319). The Commission, in opinions rendered in general hearings, has pronounced such rental charges not unreasonable. Its judgment has not been invoked in this specific case. It has made no order of reparation, nor any finding upon which one could be based. This is essential to a recovery. Chicago, B. & Q. R. R. v. Merriam & Millard Co. (C. C. A. 8) 297 F. 1.

[8] It is undoubtedly true that a common carrier is required to furnish a shipper with cars suitable and proper for the transportation of the particular commodity. This includes refrigeration. The Interstate Commerce Act (24 Stat. 379, § 1 [49 USCA §1; Comp. St. § 8563]) declares that it shall be the duty of every carrier to provide and furnish such transportation upon reasonable request therefor. United States v. Pennsylvania R. R. Co., 242 U. S. 208–219, 37 S. Ct. 95, 61 L. Ed. 251.

But this concession is not determinative of this controversy. The carrier did furnish the refrigerator cars requested. The real question here is whether its charges therefor, prescribed by filed tariffs from which departure is not permitted, were just and reasonable, and that complex question could not be answered by the district court without previous consideration by the Commission. As said by the trial court: "It cannot be said as matter of law that, because the compensation created for the transportation service was divided into two items, the portion of it called rental charge was illegal. It was illegal if that item was already included in the line-haul rate. To determine that requires an investigation of facts." The Commission, in the cases before it from which we have quoted, advised that under some conditions compensation for insulated cars should be secured through line-haul rates; that under other conditions a special charge is preferable. There is much in those opinions to indicate that, as matters then stood, these charges were not deemed to be included in the line-haul rates. But the issue here presented has never been considered nor determined by the Commission.

In the case of J. Famechon Co. v. Hines, Director General Operating the Great Northern Railroad, 151 Minn. 9, 185 N. W. 941, 187 N. W. 974, brought to recover a rental charge for one refrigerator car furnished and used in February, 1919, the Supreme Court of Minnesota at first held that "the question of the propriety of this extra charge is one upon which it is the province of the Interstate Commerce Commission to pass, and the courts cannot in this action interfere with the rates fixed." Later, upon rehearing and an amended record, in which it was stipulated that during the entire year a refrigerator or other insulated car was the only proper and suitable car in which to transport potatoes from Minnesota, the court reversed its former ruling, and held that the use of such equipment must be included in the line-haul charge, and that a separate charge therefor was not authorized. It is evident that in this decision the court sought to give effect to the views of the Commission as expressed in Perishable Freight Investigation, 56 Interst. Com. Com'n R. 449, 487, 488.

According to the Supreme Court of Minnesota the respectful consideration which is its due, it is obvious that its conclusion can have no application to the situation here presented. The remedy of plaintiff in error lies primarily in application to the Commission for the relief sought.

The judgment of dismissal was right and is affirmed.