**GOODBODY v. PENNSYLVANIA R. CO.**

**TIMKEN ROLLER BEARING CO. v. SAME.**

Circuit Court of Appeals, Sixth Circuit.
November 7, 1928.

Nos. 5001, 5002.

Luther Day, of Cleveland, Ohio. (Rufus S. Day and Donald W. Kling, both of Cleveland, Ohio, on the brief), for plaintiffs in error.

Andrew P. Martin, of Cleveland, Ohio (Andrew Squire and Thomas M. Kirby, both of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. These cases, heard together below and here, grow out of this situation:

From about April 10, 1920, to about December 1, 1920, the yard employees of the defendant in error were out on strike, and defendant was thus unable to switch cars for the respective shippers from defendant's interchange tracks to the customary delivery and loading points of such shippers at Canton, Ohio, and so notified the latter, who thereupon, with defendant's knowledge and consent, and at its request, respectively provided the switching service in question for the entire or a portion of the strike period in question, to the extent of paying wages of switching crews, providing fuel and other items of material and labor necessary to the service. In one of the instant cases defendant furnished the locomotive, the shipper maintaining the same; in the other case the shipper not only maintained, but at his own expense rented, the locomotive employed. Each shipper paid to defendant the latter's customary charges for such switching service at the regular and published line-haul freight rates, and without deduction for the value of the switching service performed by the shipper itself. In each case suit was brought in a state court to recover the reasonable value of the switching service rendered by the respective shippers, on the theory of an implied agreement by defendant to pay the same. The suits were removed to the federal court for diversity of citizenship.

In that court defendant moved to dismiss the suits for lack of jurisdiction in the court on the grounds—here broadly stated—that the relief sought essentially involved administrative questions and the making of a rate, which the court had no power to do, and which would be tantamount to giving the respective shippers a rebate contrary to law. The District Court granted defendant's motion to dismiss the suit for lack of jurisdiction. The sole question before us is one of jurisdiction of the District Court, that is to say, whether the relief asked is judicial or whether it is administrative, and so within the exclusive jurisdiction of the Interstate Commerce Commission, as to interstate and foreign commerce, and that of the Ohio Public Utilities Commission as applied to intrastate commerce. It does not appear from the pleadings which ones of the shipments in question were in interstate or foreign commerce and what shipments were intrastate. For the purposes of this review of the legal question involved the absence of such showing is immaterial.

1. Considering, first, shipments in interstate or foreign commerce: We are constrained to think that questions of allowances to the shipper for services rendered or instrumentalities furnished by him to the carrier in interstate or foreign commerce, and which should have been paid by such carrier in earning its customary and duly established rates for transportation, must be submitted to the Commission before resort to the courts. Section 15, paragraph 13, of the Interstate Commerce Act,[1] provides:

"If the owner of property transported under this act directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the Commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the

[1] 8 U. S. Comp. St. 1916, p. 9201; Code of United States Laws, 44 Stat. part 1, p. 1662 (49 USCA § 15).

services so rendered or for the use of the instrumentalities so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section."

In Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, it was held that a shipper in interstate commerce cannot maintain an action at common law in a state court for excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier according to the act, and had not been found to be unreasonable by the Interstate Commerce Commission. In Robinson v. B. & O. Ry. Co., 222 U. S. 506, 32 S. Ct. 114, 56 L. Ed. 288, it was held that no action for reparation for exactions for railroad freight payments can be maintained in any court, federal or state, in the absence of an appropriate finding and order of the Interstate Commerce Commission and that the rule laid down in the Abilene Case, supra, as to suits for recovery of unreasonable rates, applies also to suits for recovery of rates as discriminatory. In Mitchell Coal Co. v. Pennsylvania R. R. Co., 230 U. S. 247, 250, 252, 33 S. Ct. 916, 57 L. Ed. 1472, which case involved a complaint by the shipper that the carrier had made to other shippers allowances for transportation services rendered by them in hauling cars over spur tracks between their mines and the railroad station, it was held that while a carrier has the right (page 248 of 230 U. S.) under the act regulating commerce to pay shippers a reasonable allowance for services in connection with the transportation of goods shipped by them, and that the allowance paid must be treated by the courts as prima facie reasonable until the Interstate Commerce Commission has determined otherwise (pages 263, 264 of 230 U. S.), yet that in case any question should arise as to the reasonableness of the practice (pages 263 and 257 of 230 U. S.), the distinction, as affecting necessity of application to the Commission, is between suits by reason of acts prohibited by statute and those based upon unreasonable charges or practices—as to which there is no law fixing what is unreasonable and therefore prohibited.[2]

In the instant case it does not appear that the parties had agreed upon the reasonableness of the deductions claimed by the respective shippers. But, if so, there might still remain the possibility that the allowances would be attacked as rebates. In Loomis v. Lehigh Valley R. R. Co., 240 U. S. 43, 47-50, 36 S. Ct. 228, 60 L. Ed. 517, it was held that the character of the equipment which the carrier must provide and allowances which it must make for instrumentalities supplied, and services rendered, by the shipper—such as inside doors and bulkheads in cars, and timber therefor—are problems which directly concern rate-making and are peculiarly administrative, on which there should be an appropriate inquiry by the Interstate Commerce Commission before being submitted to a court. And see Texas & Pacific R. Co. v. American Tie Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255. As to car distribution, see Pennsylvania Co. v Clark Coal Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406; Same plaintiff v. Puritan Coal Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867; B. & O. R. Co. v. Pitcairn Coal Co., 215 U. S. 481, 30 S. Ct. 164, 54 L. Ed. 292. See, also, Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 66 L. Ed. 943; C., B. & Q. R. R. Co. v. Merriam (C. C. A. 8) 297 F. 1; Famechon v. No. Pacific R. Co. (C. C. A. 8) 23 F.(2d) 307. The authorities we have cited seem enough to illustrate the generality of the rule that the courts have no jurisdiction to entertain complaints against the reasonableness of a rate, rule or practice, until after the Commission has been called upon to act. True, the language of section 15 here involved provides that the Commission "*may,* after hearing * * * determine what is a reasonable charge * * * for the use of the instrumentality so furnished" etc.; but we think that, by analogy to the holding in the Abilene, Mitchell and other cases cited, it must be held that where, as here, the reasonableness of the shipper's claimed recovery for the services rendered and instrumentalities furnished by him in connection with the transportation is involved, resort to the Commission in advance to resort to the courts is mandatory, and not merely permissive. For a considered opinion on an analogous situation, see Fulton, etc., Mills v. American, etc., Express Co. (D. C.) 288 F. 854.

In the instant case it is presumable that the line-haul rate had been duly fixed by the carrier according to the act, and that it had not been found unreasonable by the Commission. This line-haul rate covered certain

---

[2] The following cases are more or less pertinent: Penna. R. Co. v. International, 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446; Morrisdale, etc., Co. v. Penna. R. Co., 230 U. S. 304, 33 S. Ct. 938, 57 L. Ed. 1494; O'Keefe v. United States, 240 U. S. 294, 36 S. Ct. 313, 60 L. Ed. 651.

services which in these cases the carrier could not perform, and which the shipper did perform. The line-haul rate was paid in full. While no question is raised here as to the shippers' performance of such services, nor as to the amount actually paid by the respective shippers, we cannot say that the amount of refund to which the plaintiffs are entitled must be precisely the amounts respectively paid by them. There is not only the question of reasonable expense, but the proper charge for the line-haul—omitting the switching services in question—is involved. The Commission has exercised jurisdiction over questions directly analogous to those presented here. United, etc., Co. v. Director General (No. 11105) 73 Interst. Com. Com'n R. 100 (discontinuance of switching service); Tidewater Co. v. Bush Terminal Co. (No. 13877) 80 Interst. Com. Com'n R. 493 (cost of cartage); United, etc., Co. v. Director General (No. 11105) 112 Interst. Com. Com'n R. 687 (spotting cars).

2. Shipments in intrastate commerce: Ohio has a comprehensive Board of Public Works Act (1 Gen. Code Ohio, c. 9, p. 91), including elaborate provision for a Railroad Commission (Code, §§ 487–614). By sections 505 and 506 a railroad is required to file with the Commission schedules open to public inspection, showing all rates, fares, and charges for transportation of passengers and property and any service in connection therewith which the railroad has established and which are in force at such time. "As a part of such schedules, each railroad shall publish the rules and regulations affecting the rates charged or to be charged for transportation of passengers or property; also its charges for delay in loading or unloading cars, for track and car service, rental, demurrage, switching, terminal or transfer service, or for any other service in connection with transportation of persons or property." Changes in schedules may be made only upon ten days' notice to the Commission (section 508), and are required to conform to schedule (section 510), and the Commission is empowered to prescribe such changes in the form in which schedules are issued as may be found expedient (section 511). The Commission is also empowered to enforce reasonable regulations for furnishing cars to shippers, switching, loading and unloading them, etc. (section 521), and upon complaint that any of the "rates, fares, charges or classifications, * * * or any joint rate or rates are in any respect unreasonable or unjustly discriminatory, or that any regulation or practice, affecting the transportation of persons or property, or any service in connection therewith, are in any respect unreasonable or unjustly discriminatory, or that any service is inadequate," the Commission may investigate the complaint (section 524), and may make suitable orders thereon (section 527). It is also given power to make such investigation on its own motion (section 528); also to change existing rates, fares, charges or classifications, or regulations or practice affecting transportation of persons or property, or service in connection therewith, when found unreasonable or unjustly discriminatory, etc. (sections 535 and 536). A railroad dissatisfied with an order of the Commission in the respects hereinbefore stated may bring suit in a court of common pleas against the Commission to vacate and set aside its order on the ground that the rates, fares, etc., fixed in such order are unlawful or unreasonable, or that the regulation, practice or service fixed in the order is unreasonable. Provision is made for submission of new evidence to the Commission, and the action of the Commission thereon (sections 546, 547), for investigation by the Commission into violations of the Interstate Commerce Law (section 563), for punishment of the carrier for violating certain provisions of the act (sections 564, 565), and for punitive damages against the railroad on account of the doing or permitting of acts prohibited in the Commission Act, or the omission to do acts required thereby to be done (section 569), as well as *express power to regulate* "as herein provided in such case" *any charge or practice,* fare or transportation of passengers or property, *or any service in connection therewith not theretofore in the Act specifically designated unreasonable or unjustly discriminatory;* also for the submission to the Commission by a formal complaint of all claims, charges or demands against a railroad for loss or damage to property while in the custody of the carrier, or for *overcharges upon shipments,* or for *any other* service in violation of the chapter, if not paid within the time specified in the act (section 579).

The general scheme of the Ohio Railroad Commission Act is in harmony with that of the Federal Interstate Commerce Commission Act; indeed, the Ohio act expressly provides that the schedules to be issued by the railroad shall, as far as practicable, conform to the forms prescribed by the Interstate Commerce Commission (section 511), and the Supreme Court of Ohio has held that the power to fix rates does not rest in the courts. East Ohio Gas Co. v. Cleveland, 106 Ohio St. 489, 512, 140 N. E. 410. The act also ex-

pressly recognizes the right of the railroad to procure facilities or service incident to transportation, and to pay a reasonable compensation therefor (section 566). This provision is directly in point here.[3]

We think it fairly apparent that under the Ohio Public Utilities Act (General Code, §§ 487–614) a claim to refund on account of transportation facilities supplied by the shipper should be submitted to the Commission, in advance of resort to the courts. Cf. Publishing Co. v. Express Co., 13 Nisi Prius Rep. (N. S.) 403, 406, et seq. (affirmed by Ohio C. C. A.) King Powder Co. v. Thrasher, 20 Ohio Nisi Prius Rep. (N. S.) 401, 416.

It follows, from the views we have expressed, that the judgment of the District Court in each of the cases we are considering should be affirmed.

---

[3] Section 566 reads as follows: "No railroad shall demand, charge, collect or receive from a person, firm or corporation a less compensation for the transportation of property or for a service rendered or to be rendered by it in consideration of such person, firm or corporation furnishing a part of the facilities incident thereto; but nothing herein shall prohibit a railroad from procuring facilities or service incident to transportation and paying a reasonable compensation therefor."