# TEXAS & PACIFIC RAILWAY COMPANY *v.* AMERICAN TIE & TIMBER CO., LTD.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 180. Argued January 20, 21, 1914.—Decided June 8, 1914.

Whether a class tariff includes a particular commodity is a controversy primarily to be determined by the Interstate Commerce Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the Act to Regulate Commerce.

The courts may not, as an original question, exert authority over subjects which primarily come within the jurisdiction of the Interstate Commerce Commission.

Whether crossties are or are not lumber and therefore within the tariffs filed for the latter is a question on which there is great diversity of opinion even among experts upon the subject, and one that should be determined in the first instance by the Interstate Commerce Commission.

190 Fed. Rep. 1022, reversed.

THE facts, which involve the jurisdiction of the Federal courts of cases to recover damages against a railway company for refusing to accept interstate shipments without action first taken thereon by the Interstate Commerce Commission, are stated in the opinion.

*Mr. Hiram Glass,* with whom *Mr. W. L. Hall* was on the brief, for plaintiff in error:

The Circuit Court did not have power to determine the issues and grant the relief prayed for under the facts disclosed by the record.

The trial court should have instructed a verdict for the plaintiff in error.

The damages of defendant in error caused by its consent

to the wrongful cancellation of the contract by the Union Pacific Railway Company are not recoverable.

The verdict of the jury and the judgment of the court awarded greater damages than sued for.

In support of these contentions, see § 6, Interstate Commerce Act, June 29, 1906; *Balt. & Ohio R. R.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Tex. & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Int. Com. Comm.* v. *Illinois Cent. Ry. Co.*, 215 U. S. 452; *Morrisdale Coal Co.* v. *Penn. R. R. Co.*, 230 U. S. 304; *Mitchell Coal Co.* v. *Penn. R. R.*, 230 U. S. 247; *Southern Railway* v. *Reid*, 222 U. S. 424; *Atl. Coast Line* v. *Macon Grocery Co.*, 166 Fed. Rep. 206; *Smith* v. *Detroit &c. Ry.*, 175 Fed. Rep. 506; *C. I. & S. Co.* v. *K. & M. Ry.*, 178 Fed. Rep. 261; *Franklin* v. *Penn. R. R. Co.*, 203 Fed. Rep. 134; *Pacific Coast B. Co.* v. *Railroad*, 20 I. C. C. 546; *United States* v. *Ill. Terminal Ry. Co.*, 168 Fed. Rep. 548; *So. Pac. Ry. Co.* v. *Int. Com. Comm.*, 200 U. S. 552; *Howard Supply Co.* v. *C. & O. R. R.*, 162 Fed. Rep. 188; *Greason* v. *St. L., I. M. & S. Ry. Co.*, 86 S. W. Rep. 722; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Mugg* v. *T. & P. Ry. Co.*, 202 U. S. 242; *McDonald* v. *K. C. B. & N. Co.*, 149 Fed. Rep. 360; *Beck* v. *Pauli*, 52 Fed. Rep. 700; *Shouse* v. *Doane*, 21 So. Rep. 807; *Lapsley* v. *Howard*, 119 Missouri, 489.

*Mr. Rollin W. Rodgers*, with whom *Mr. R. P. Dorough* was on the brief, for defendant in error:

Having in effect a joint through lumber tariff, covering "lumber, all kinds," a carrier must transport all articles offered embraced in the broad meaning of the term lumber.

The competent evidence required on which to base an instruction to the jury that plaintiff in error had a lawful rate in effect to transport ties was offered by defendant in error.

The tariff in effect when filed was intended to cover ties and the contention now set up is a subterfuge.

The defendant in error is entitled to recover in this cause under § 1 of the Act to Regulate Commerce.

The charge of the court on cancellation of contract was proper under the evidence.

Sections 1, 3, 6, 8, and 9, of the Act to Regulate Commerce, 24 Stat. 379, 34 Stat. 584, apply to this case.

In support of these contentions, see *Am. T. & T. Co.* v. *K. C. S. Ry. Co.*, 175 Fed. Rep. 28; *Balt. & Ohio Ry. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *C., B. & Q. Ry.* v. *Feintuch*, 191 Fed. Rep. 488; *Int. Com. Comm.* v. *D., L. & W. Ry.*, 220 U. S. 235; *Int. Com. Comm.* v. *I. C. R. R. Co.*, 215 U. S. 426; *Lyne* v. *D., L. & W. Ry.*, 170 Fed. Rep. 847; *Montague* v. *Lowry*, 193 U. S. 38; *Norrington* v. *Wright*, 115 U. S. 188; *N. Y., N. H. & H. Ry. Co.* v. *Int. Com. Comm.*, 200 U. S. 361; *Penn. R. R. Co.* v. *Int. Coal Co.*, 230 U. S. 184; 1 Beach Modern Law of Contracts, § 122. See also the following cases decided by the Interstate Commerce Commission. *Blume* v. *Wells-Fargo & Co.*, 15 I. C. C. 53; *Enterprise Trans. Co.* v. *Penn. R. R.*, 12 I. C. C. 326; *Foster Bros.* v. *Duluth S. S. & A. Ry.*, 14 I. C. C. 232; *Hurlburt* v. *L. S. & M. S. Ry.*, 2 I. C. C. 122; *S. C.*, 22 *Id.* 81; *Ind. Frt. Bureau* v. *C.; C., C. & St. L. Ry.*, 15 I. C. C. 367; *Joynes* v. *Penn. R. R. Co.*, 17 I. C. C. 361; *Lanning-Harris Co.* v. *St. L. & S. F. Ry.*, 15 I. C. C. 37; *Newton Gum Co.* v. *C., B. & Q. Ry.*, 16 I. C. C. 341; *N. Y. Board of Trade* v. *Pa. R. R.*, 3 I. C. C. 417; *Pitts* v. *St. L. & S. F. Ry.*, 10 I. C. C. 684; *Pac. Coast Biscuit Co.* v. *O. R. & N. Co.*, 20 I. C. C. 178; *Pueblo Trans. Assn.* v. *So. Pac. Ry.*, 14 I. C. C. 82; *Reynolds* v. *Railway Co.*, 1 I. C. C. 685; *Woodward* v. *Louis. & Nash. Ry. Co.*, 15 I. C. C. 170; *Washer Grain Co.* v. *Mo. Pac. Ry.*, 15 I. C. C. 147.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Basing its cause of action on the Act to Regulate Commerce the American Tie & Timber Company, defendant

in error, hereafter called the Tie Company, commenced suits in the Circuit Court of the United States for the Northern District of Texas against the Texas & Pacific Railway Company, plaintiff in error, and the Kansas City Southern Railway Company to recover damages alleged to have resulted from the refusal of the railway companies to furnish, in September, October and November, 1907, cars for the loading of oak railway crossties at various points on the line of the railways in Arkansas and Louisiana for shipment to Linwood, Kansas, beyond the lines of the companies. The cases were consolidated for trial, subject to a plea to the jurisdiction filed by the Kansas City Southern Railway Company, which plea was afterward sustained and the suit as to that company dismissed. There was a trial, however, as to the Texas & Pacific Railway Company, resulting in a verdict and judgment thereon for $17,112.33, and the writ of error now before us is prosecuted by the Railway Company to a judgment of the court below affirming the trial court. (190 Fed. Rep. 1022.)

At the close of the evidence a motion was made to dismiss "because under the facts and circumstances now disclosed by the record, and compatibly with the act of Congress of the United States to regulate interstate commerce, this court has no power to consider and decide the subject matters which are complained of, or to award the relief prayed for by plaintiff." The denial of this motion is assigned as error and we come at once to consider it and state only so much of the pleadings and evidence as is necessary to adequately present the issue to be decided.

The amended petition after averring that the Tie Company was a Louisiana corporation and that the Railway Company was a corporation organized under the laws of the United States, alleged in substance that in 1901 the Railway Company issued and filed with the Interstate Commerce Commission "its joint through lumber tariff, T. & P. No. 8500–H, applying on lumber, all kinds (except

Walnut and Cherry), lath and shingles and articles taking same rates from points on the Texas & Pacific Railway Co. to points in Kansas," by which a joint through rate of twenty-four cents per hundred pounds was put into effect from points on the Railway Company's line in Arkansas and Louisiana to Linwood, Kansas, "on, amongst other things, oak lumber," which rate it was averred had been continuously in effect from the date of the filing of the said tariff up to the happening of the events complained of.

It was averred that on July 23, 1907, the Tie Company entered into a contract with the Union Pacific Railway Company to deliver to said company f. o. b. cars Linwood, Kansas, 150,000 oak railway crossties of specified dimensions at the rate of fifteen thousand per month, beginning on or before October 1, 1907, at the price of 86 cents per tie, which contract was by its terms based on the rate of 24 cents per hundredweight fixed in the tariff filed as above stated in 1901. That for the purpose of performing said contract the Tie Company accumulated at stations on the Railway Company's line in Arkansas and Louisiana 44,541 oak crossties for shipment to Linwood, Kansas, and on October 10, 1907, requested the railway to furnish cars for the loading of the crossties at such points. It was alleged that after furnishing three cars, which were loaded by the Railway Company and shipped at the rate of 24 cents per hundred pounds, the Railway Company refused to provide further cars or to receive the crossties for shipment upon the ground, as stated by it, that it had no through rate applicable to oak railway crossties from the several points on its line to Linwood, Kansas. The petition charged, however, that the joint through lumber tariff above referred to and the rate of 24 cents thereby established included oak ties and that the railway's refusal to provide cars and to carry the ties at its published rate was an unjust and unreasonable discrimination against the Tie Company, against the several places on the Railway

Company's line where the ties had been accumulated and against the ties as an article of commerce, which discrimination, it was averred, was practiced by the Railway Company with the object of preventing the movement of the crossties to points beyond its line and of thus compelling the Tie Company to sell the ties which it had accumulated to the Railway Company. It was alleged that the refusal to transport the ties had resulted in unreasonable prejudice and disadvantage to the Tie Company and to the traffic in ties, and in benefit to the Railway Company as a purchaser and consumer of crossties, all of which constituted a violation of the Act to Regulate Commerce. It was averred that in consequence of the refusal of the Railway to furnish the cars and the resulting inability of the Tie Company to deliver the ties to the Union Pacific Railway under the contract, that company had cancelled the contract to buy the ties. And the amount sought to be recovered was alleged to be the loss resulting to the Tie Company consequent on such cancellation, together with punitive damages based on the "wilful, wanton and malicious" conduct on the part of the Railway Company, and a reasonable attorney's fee.

The Railway Company besides denying generally the allegations of the amended petition alleged that its joint through lumber tariff did not include a rate on oak railway crossties, but that crossties were a separate and distinct and well-recognized freight commodity, and that at the time mentioned in the petition it had not filed with the Interstate Commerce Commission any tariff under which it could lawfully accept for interstate shipment, at a through rate, the crossties offered by the Tie Company. The answer further denied that its failure to have in effect such a rate was a discrimination against crossties or the Tie Company or any locality, and alleged that oak crossties had never before been offered to it in Arkansas and Louisiana for shipment to interstate points on its lines or

connections so as to render it advisable to establish such a rate. It was averred that when the Railway Company first learned, in September, 1907, of the purpose of the Tie Company to ship crossties it at once notified the Tie Company that it had no through rate on ties and therefore would not be able to offer such a rate but would seek to establish a through rate of fifty cents per hundredweight if sufficient time was allowed it to give the public notices of the filing of the tariff as required by the statute. It was then alleged that thereafter the first intimation that the Railway Company had of the purposes of the Tie Company was a letter transmitted to one of its officers from the Interstate Commerce Commission informing the Railway Company of the fact that the Tie Company had filed an informal complaint with the Commission on the ground that although the Railway Company's tariff on lumber embraced crossties, it had announced its intention not to receive them under the lumber schedule, and protesting in advance against permitting the Railway Company to file a specific tariff on crossties at fifty cents per hundredweight, because, as compared with the 24 cent lumber rate, it would be unreasonable. That at once to avoid difficulty the Railway Company applied to the Interstate Commerce Commission to be allowed immediately to put into effect a cross-tie rate at 24 cents per hundred pounds, the same as the lumber rate, and such request was refused by the Commission. Request was then made to put in such a rate after five days' notice, which was likewise refused, and thereupon in January, 1908, the Railway Company issued and filed with the Interstate Commerce Commission a joint through lumber tariff amended so as to include at the lumber rate "wood railroad crossties, all kinds, car loads." The answer then charged that at no time until such tariff became effective, February 13, 1908, could the Railway Company have lawfully accepted and carried oak railway crossties under the provisions of the

Act to Regulate Commerce. Referring to an averment in the petition concerning the acceptance of three cars of crossties at about this time for shipment at the lumber rate, the answer averred that if the facts were true it furnished no basis for recovery, as the receipt of the ties inadvertently or otherwise in the absence of a rate would have been a violation of law and afforded no ground for inferring the obligation to continue to do so, and besides did not aid the plaintiff's case, which was based upon the refusal of the Railway Company to take freight at an established and existing rate, not upon any supposed obligation by estoppel to do so when there was no established rate. And by an amendment to the answer it was insisted that under § 9 of the Act to Regulate Commerce the plaintiff could not prosecute its action because by making a complaint, as it had done, to the Interstate Commerce Commission concerning the failure to treat the lumber tariff as embracing a rate on crossties, the plaintiff had elected to proceed before the Commission.

The evidence at the trial tended to support the allegations of the amended petition as to the making of the contract with the Union Pacific Railway Company, the accumulation of crossties at the several stations on the Railway's line, the request for cars for the shipment of the ties to Linwood, Kansas, the refusal of the Railway to provide the cars, the cancellation of the contract by the Union Pacific Railway Company, and the consequent loss to the Tie Company. The Railway Company's joint through lumber tariff was introduced in evidence and it was not disputed that by it a rate of 24 cents per 100 pounds was established on oak lumber and that oak railway crossties were not specifically mentioned. The Railway Company also introduced in evidence the correspondence between it and the Interstate Commerce Commission showing among other things the request to be allowed to put immediately into effect the cross-tie rate and the refusal of the

Commission to grant the request, and, the other facts and circumstances stated in the answer. It is not disputable that the pivotal question in the case was whether oak railway crossties were included in the filed tariff fixing a through lumber rate of 24 cents per hundredweight, and so far as the solution of that inquiry depended upon the views of men engaged in the lumber and railroad business as developed in the testimony it is equally indisputable that there was an irreconcilable conflict. And this conflict at once leads to a consideration of the principle which dominates the controversy and upon which its decision therefore depends.

There is no room for controversy that the law required a tariff and therefore if there was no tariff on crossties, the making and filing of such tariff conformably to the statute was essential. And it is equally clear that the controversy as to whether the lumber tariff included crossties was one primarily to be determined by the Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statute. Indeed, we think it is indisputable that that subject is directly controlled by the authorities which establish that for the preservation of the uniformity which it was the purpose of the Act to Regulate Commerce to secure, the courts may not as an original question exert authority over subjects which primarily come with the jurisdiction of the Commission. *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Balt. & Ohio R. Co.* v. *United States ex rel. Pitcairn Coal Co.*, 215 U. S. 481; *Robinson* v. *Baltimore & O. R. Co.*, 222 U. S. 506; *Mitchell Coal Co.* v. *Penna. R. R. Co.*, 230 U. S. 247; *Morrisdale Coal Co.* v. *Penna. R. R. Co.*, 230 U. S. 304. No question is made as to the controlling effect of the doctrine as a general rule, but it is urged that it is not applicable to this case for the following reasons:

(a) The foundation upon which the doctrine rests, it is

insisted, is the necessity of a uniform enforcement of the Interstate Commerce Act and the danger of diversity and conflict arising if questions concerning the existence of tariffs or their reasonableness, of discriminations and preferences were left to be originally determined by courts of general jurisdiction, thus giving rise to the possibility of one rule in one jurisdiction and another in another. But the argument proceeds to insist that upon the principle that where the reason for the application of a law ceases to exist the law itself ceases to apply, the settled construction of the Act to Regulate Commerce, announced and enforced in the *Abilene* and other cases, has here no application because it is so plain that oak crossties were included in the lumber rate as fixed in the tariff of the Railway Company that there is no reason for proceeding primarily before the Commission, as there is no possibility of difference on the subject if left to the consideration of the courts. We need not pause to point out the palpable error of law which the proposition involves since on the face of the record it is apparent that the assumption of fact upon which it rests is absolutely without foundation. We say this because nothing could more clearly demonstrate such result than does the conflict and confusion in the testimony concerning whether crossties were included in the filed lumber tariff. And indeed the same demonstration arises from a consideration of some decided cases, as, for instance, *American Tie & Timber Company* v. *Kansas City So. Ry. Co. et al.*, 175 Fed. Rep. 28, 33, presumably a report of this case, where it appears that at the first hearing the trial judge was so clearly of the opinion that crossties were not lumber that he so charged the jury and directed a verdict for the Railroad Company. See also *Greason* v. *St. Louis &c. R. Co.*, 112 Mo. App. 116, where it is apparent that the same conclusion was reached.

(b) Because the question has been determined by the Interstate Commerce Commission in *Reynolds* v. *Railway*

*Co.,* 1 I. C. C. Rep. 600, 685. An examination of that report, however, discloses that the railway had in effect a published rate on crossties *eo nomine* and the complaint was that it was unreasonable because it was higher than the rate on lumber. The ruling of the Commission was not that the lumber rate included a rate on ties, but that the rate on ties was unreasonable as compared with the lumber rate and should be reduced.

(c) Because the Railway Company by loading and carrying the three cars of ties under the 24-cent rate had itself recognized the applicability of the lumber rate to crossties and was concluded thereby. But without stopping to consider the tendency of the proof establishing the want of foundation for the proposition we think it is wanting in merit for this obvious reason: If, as we have seen, the question of whether crossties were embraced in the filed tariff concerning lumber was involved in such conflict and doubt as to require the action of the Interstate Commerce Commission, the situation was such that the Railway Company could not do by indirection that which the statute permitted it to do only by compliance with the law, that is, filing its tariffs in the regular way. Nothing could better serve to demonstrate this self-evident truth than by recurring to the fact that at the very inception of the controversy the request made by the Railway Company to the Interstate Commerce Commission to be allowed to immediately put in the rate on crossties was refused by that body.

(d) Because the Railway Company did not refuse to transport the ties in good faith and insisted upon the absence of a scheduled rate simply as a pretext and device for preventing the shipment of the ties and their delivery in performance of the contract with the Union Pacific Railway, and with the ulterior and wrongful motive of keeping the ties on its line so as to be able to purchase them itself from the Tie Company. But without pausing

to do more than direct attention to the fact that this proposition is necessarily disposed of by what we have said, that is, by the lawfulness, in view of the state of the existing and filed tariff, of the refusal until the Commission had acted, we think all the contentions under this last head are completely answered by the statement that the suit was based upon the unlawfulness of the action of the Railway Company in refusing to carry the ties in view of the filed tariffs, and therefore the contentions are not open for our consideration.

It results that error was committed by the court in declining to sustain the motion to dismiss for want of jurisdiction and therefore it is our duty to reverse.

*Reversed.*

MR. JUSTICE PITNEY dissents.