HENRY L. HUNTER, INC., Appellant, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Respondent.

First Department, July 13, 1917.

**Carriers — action to recover demurrage charges alleged to have been improperly exacted — effect of payment without protest — tariff rules construed — remedy of carrier.**

In an action by a produce dealer to recover demurrage charges alleged to have been improperly exacted by the defendant it appeared that the defendant owned produce houses located in its delivery yard and used solely for the handling of carload shipments of produce, some of which it had leased to the plaintiff; that the defendant made daily placements for unloading at the produce houses, one during the noon hour and one during the night time; that written notices of arrival of cars were sent by defendant to plaintiff, but, pursuant to an agreement, all cars were held by defendant awaiting orders for placement and were so placed upon the next switching movement after the receipt of such orders; that the shipments were of perishable produce and that the bills in question had been paid in full and without protest for two years. The plaintiff contends that the charges were excessive because the defendant used as a basis for computing the same the dates of sending of arrival notices rather than the dates of actual placements of the cars.

Evidence and provisions of the rules of the defendant filed in accordance with the Interstate Commerce Act examined, and *held,* that no improper charges had been exacted from the plaintiff.

Where the interpretation of the rules only are involved, the State courts may act; but where that interpretation involves their application to

extraordinary situations, the question involves more than mere interpretation. To an extent it involves their reasonable application and calls for an administrative function, which belongs first, at least, to the Interstate Commerce Commission.

Since the charges were voluntarily paid after two years of acquiescence in a plan adopted for plaintiff's convenience, the latter cannot recover at common law and, if he has a remedy, it is either by an application to the Interstate Commerce Commission, or by a suit in the United States courts.

LAUGHLIN, J., dissented.

APPEAL by the plaintiff, Henry L. Hunter, Inc., from an order of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of October, 1916, affirming a judgment of the City Court of the City of New York, dismissing the complaint.

*Neil P. Cullom*, for the appellant.

*Madison G. Gonterman*, for the respondent.

SMITH, J.:

Plaintiff's claim is for about $1,800, alleged to have been improperly exacted of the plaintiff as demurrage charges. In defendant's Harlem river station was operated what is known as the Bronx produce house, which is located in its delivery yard. This Bronx produce house contained various sections which were leased to dealers in produce, and they were solely for the handling of carload shipments of produce sent to the lessees of such sections. The plaintiff was the lessee of three of said sections. The defendant maintained and operated at its produce house three tracks. Each tenant was entitled to use the part of said track opposite the leased section. Only one car could be placed for unloading opposite any particular section, and a car could be neither placed for unloading nor moved after placement without moving all the other cars upon the track. The defendant made daily placements for unloading at the produce house, one during the noon hour and the other during the night time. The unloading was done by the tenants during the day time. Written notices of the arrival of cars were promptly sent by the defendant to the plaintiff, and were the only written notices sent. A representative of the defendant made daily calls upon the

plaintiff and obtained instructions as to what cars should be held or placed for unloading. None of the cars in controversy were upon arrival placed by the defendant at plaintiff's section of the produce house, but pursuant to an arrangement between the plaintiff and the defendant and the other tenants of the produce house, and in accordance with the specific instructions from the plaintiff, all of said cars were held by the defendant in its holding yards awaiting orders from the plaintiff for placement, and were so placed upon the next switching movement after the receipt of such orders. After said cars had been unloaded and released the defendant rendered bills to the plaintiff covering demurrage charges for all of said cars, showing in detail the length of the detention of said cars. *These bills were paid in full by the plaintiff to the defendant without protest.* The charges were governed by defendant's tariffs of car demurrage rules duly filed, published and posted in accordance with the Interstate Commerce Act. Under the provisions of said tariffs a period known as " free time " is allowed at destination before demurrage for car detention begins to accrue. After the expiration of the " free time " a charge of one dollar per day or fraction thereof is made until the car is released. In the assessment of said charges the defendant computed the " free time " upon each car from the first seven A. M. after the day upon which the notice of arrival had been sent.

This proceeded for two years without any complaint on the part of plaintiff, and, as before stated, with full payment of the demurrage charges without protest. It was for the benefit of the plaintiff and other produce dealers to have such an arrangement, and not for the benefit of the railroad company. This being perishable produce, the plaintiff desired it to be delivered in accordance with the condition of the load and the demands of the market. While these cars were held awaiting orders they were mostly held in the holding yard at the Harlem station. When that was congested there were other holding yards two, four and seven miles up the river which were used when necessary. Whenever ordered, however, these cars were at once brought down for placement upon the track in front of the plaintiff's section.

It is plaintiff's contention that the demurrage charges so

made and paid were excessive because the defendant used as the basis for computing such charges the dates of sending of arrival notices rather than the dates of actual placements of the cars on the tracks adjacent to the produce house.    The right of the defendant to demurrage on the cars in question is governed by the defendant's tariffs of car demurrage rules duly filed, published and posted in accordance with the Interstate Commerce Act.    In the assessment of the charges here claimed to be excessive the defendant computed the "free time" upon each car from the first seven A. M. after the day upon which the arrival notice had been sent.    Appellant asserts that this was unauthorized and that demurrage charges on its cars are governed by rule 3, section D, and rule 5, section A, of the tariff.    The former rule provides that "on cars to be delivered on any other than public-delivery tracks, time will be computed from the first 7:00 A. M. after actual or constructive placement on such tracks," and the latter rule defines constructive placement, giving to the carrier the right to set the "free time" running by written notice "when delivery of cars consigned or ordered to any other than public-delivery tracks or to industrial interchange tracks cannot be made on account of the act or neglect of the consignee, or the inability of the consignee to receive." Concededly, the produce house tracks were neither public-delivery nor industrial interchange tracks and no constructive placement notice was sent.    But the trial court held that the rule for constructive placement has no application for the reason that the failure to place the cars for unloading was due not to "the act or neglect of the consignee, or the inability of the consignee to receive," but to the fact that the plaintiff directed them not to be placed until specific orders were given.

Two questions are thus presented: *First.*    Do the rules permit the carrier and the consignee to make such an agreement as to the holding of cars before actual placement?    Rule 1 provides that cars *held for consignees* are subject to these demurrage rules.    In the note to rule 2, section B, it is stated: "If a consignee wishes his car held at any break-up yard or a hold-yard before notification and placement, such car will be subject to demurrage."    This clearly recognizes the

right of a consignee to direct that the cars consigned to him be " held for orders " and makes such cars so held subject to demurrage. Section B-2 under rule 3 recognizes the right of the consignee to direct cars to be " *held for disposition,*" and section B of rule 2 expressly provides for cars " held for switching orders." Under section A, rule 4, notice may be given to the consignee as may be agreed upon between the railroad and such consignee. When cars are held for switching orders and are actually delivered upon the switch of the consignee when ordered, no further notice is necessary. As they were held for switching orders before placement they were subject to demurrage when placed and the provisions of the rules as to actual placement and constructive placement as far as they affect the right to collect demurrage are necessarily rendered inoperative. This is not a modification of the demurrage rules because the conditions are contemplated by the rules themselves. We, therefore, agree with the trial court that no improper exaction has been made of plaintiff by the defendant.

We reach then the second question: If these rules by strict construction can be held to have been violated, we are still of the opinion that the judgment should be affirmed for the reasons stated by the Appellate Term (97 Misc. Rep. 26). All rules as well as all statutes should receive a reasonable construction. The situation presented was peculiar. The shipments were of perishable produce. The necessity for the immediate unloading depended in part upon the condition of the produce upon arrival. It might be of great importance to first unload a shipment of later arrival in order to save the shipment. Also, the condition of the market was an important factor in determining what shipments should first be unloaded. If under such conditions the consignee might not direct the order in which the cars should be placed for unloading the rules were obviously deficient, and if there be any doubt as to whether they should be so construed as to permit such an agreement between carrier and consignee, the question is for the Interstate Commerce Commission and not for the court. It is essentially an administrative question. It is not merely a question of an interpretation of rules under general conditions but of their interpretation under conditions apparently not

in the minds of the Commissioners when the rules were approved. . Cases are cited in the briefs defining the class of actions of which the State courts can take jurisdiction. It may be stated as a general rule that where the interpretation of the rules only are involved, the State courts may act. But where that interpretation involves their application to extraordinary situations the question involves more than mere interpretation. To an extent it involves their reasonable application and calls for an administrative function, which belongs first, at least, to the Interstate Commerce Commission. (*Texas & Pacific R. Co.* v. *American Tie Co.*, 234 U. S. 138; *Loomis* v. *Lehigh Valley R. R.*, 240 id. 43.) Moreover, these charges were voluntarily paid after two years of acquiescence in a plan adopted for plaintiff's convenience. Plaintiff clearly could not have recovered at common law. Because they were voluntarily paid it needs the assistance of the Interstate Commerce Act to obtain restitution. Placing reliance upon that act, it must be remitted to the remedy provided by that act, which is either an application to the Commission or a suit in the United States courts.

The determination should be affirmed, with costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concurred; LAUGHLIN, J., dissented.

Determination affirmed ,with costs.