## Rowan County Freestone Co. v. Chesapeake & O. Ry. Co.

(Decided June 12, 1936.)

HOWARD VAN ANTWERP, JR. and LESTER HOGGE for appellant.

JAMES CLAY and HUNT & BUSH for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant, a corporation engaged at Farmers, Ky., in quarrying and selling stone, filed a petition on Au-

gust 17, 1934, in which it charged that in May, 1933, it had an opportunity to bid on an order for 1,200 tons of riprap stone wanted by the United States government for harbor work at Delphi, Ohio. Appellant says that before making its bid on the contract to furnish this stone, it sought from the agents of appellee a rate per net ton for hauling the stone from Farmers, Ky., to Delphi, Ohio. It was made known to appellant that the published tariff rates did not contain a through or joint rate on stone from Farmers to Delphi. It is alleged that agents of appellee told appellant that in making its bid it might adopt a rate of $1.50 per ton, and, if it should secure the contract, the $1.50 rate would be published.

Claiming to have relied upon that assurance, appellant made its bid using the above rate, and was awarded the contract, of which fact it notified the carrier, and "thereafter the defendant breached its agreement to publish said rate by failing to publish same, though many times requested so to do," and it is asserted that because of defendant's refusal to publish the rate as agreed, the contract was canceled, whereby appellant says it lost a profit of 50 cents per ton, or a total of $600, for which judgment was sought.

Appellee demurred to the petition, and the court overruled same, whereupon appellee answered, denying specifically the allegations of the petition, affirmatively pleading that it was a common carrier engaged in interstate hauling of freight; that the transportation of stone between the points named in the petition constituted interstate commerce; that being such, control of rates was a matter delegated by Congress to the Interstate Commerce Commission, it having under the law sole power to establish and regulate rates, and that appellee had no power or authority to agree with appellant that it would transport its commodity between the named points for any fixed sum, or to agree that it would publish any particular binding rate for the haul; that if it should publish the rate, such would not be valid until filed with and approved by, the Interstate Commerce Commission.

It was further alleged that any rate published by it and accepted by the Commission would only relate to its haul to Cincinnati, since at that point the transpor-

tation of the stone to Delphi would necessarily be by a connecting line.

The cause was submitted on appellee's renewal of a motion to have the court reconsider its general demurrer to the petition, which motion was sustained, and, upon reconsideration, the court set aside the former order and sustained the demurrer. Appellant declined to plead further, and final order was entered dismissing the petition over objection and with exception, and this appeal results.

Appellant contends that his petition stated facts sufficiently to constitute and support a cause of action, but appellee contends that the demurrer was properly sustained, because Congress alone has the power to fix and regulate rates charged by common carriers, through the agency of the Interstate Commerce Commission. The substance of its answer, quoted above, presents its contention.

Appellant's petition did not sufficiently state a cause of action, since he was charged with the knowledge, or at least with the duty of ascertaining that the shipment, if accepted by appellee would necessarily be placed in the hands of a connecting carrier for completion. He did not seek to have the connecting carrier publish a rate from Cincinnati to Delphi, nor did he seek to have joint publication of rates. One carrier may not bind a joint carrier by publication of special tariffs for its line. Wheelock v. Walsh Fire Products Co. (C. C. A.) 60 F. (2d) 415, 416.

Appellant did not offer his shipment to appellee for transportation to be accepted by it either at the regular rate or upon what he now alleges to be the contract rate, but he canceled the contract without taking the controversy up with the Interstate Commerce Commission.

Since the proposed transportation was admittedly one of interstate commerce, the Interstate Commerce Commission had sole jurisdiction of the matter of establishing a rate; in this case a joint rate. In the absence of a fixing of the rate, the appellee, in accepting the shipment, would have violated the terms of the Transportation Act and subjected itself to heavy penalties.

Section 6, paragraph (7), title 49 U. S. C. A., the title commonly called "Transportation Act," prohibits the engaging in interstate transportation unless and until rates are established by the Commission. Section 13, title supra (49 U. S. C. A., sec. 13), provides a complete method for a shipper to obtain redress for any grievance against a carrier, whether the complaint be for something done or omitted to be done. See also, section 16 of the act, supra (49 U. S. C. A., sec. 16).

For this court to hold that appellant was entitled to the relief here sought would be in the face of the Transportation Act, and furnish a way for an agent of a carrier to annul the provisions of the act. It is not within the province of the lower court nor this court to establish rates. Atchison, T. & S. F. R. Co. v. United States, 232 U. S. 199, 34 S. Ct. 291, 58 L. Ed. 568. To undertake to do so would deprive the Commission of power and authority distinctly vested in it by Congress. The cases of Illinois C. R. Co. v. Henderson Elevator Co., 226 U. S. 441, 33 S. Ct. 176, 57 L. Ed. 290, and Texas & Pacific Railway Co. v. American Tie Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255, Southern Railway Co. v. Reid, 222 U. S. 424, 32 S. Ct. 140, 56 L. Ed. 257, determine the main question here and adversely to the contention of appellant.

Judgment affirmed.