**INTERNATIONAL MILLING CO. v.
LOWDEN et al.**

No. 10754.

Circuit Court of Appeals, Eighth Circuit.
June 19, 1937.

Harold G. Simpson, of Minneapolis, Minn. (Ernest W. Erickson, of Minneapolis, Minn., on the brief), for appellant.

Philip Stringer, of St. Paul, Minn. (Alexander E. Horn, Edward S. Stringer, and McNeil V. Seymour, all of St. Paul, Minn., and W. F. Dickinson and Harry E. Boe, both of Chicago, Ill., on the brief), for appellees.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is an action brought by the trustees of the Chicago, Rock Island & Pacific Railway Company against the International Milling Company for undercharges covering numerous car loads of flour shipped from Davenport, Iowa, to various points east of Peoria, Ill. Besides denying any undercharge, the milling company pleaded a counterclaim for overcharge collection from its consignee as to each shipment. In the trial court, the parties tried the issues on a selected typical car under a stipulation that the result should govern all other cars involved. A jury was waived. Findings of fact were made, conclusions of law stated, and judgment entered for plaintiffs. The milling company appeals.

The sole issue below and here is the application of a rate tariff. All of the shipments in question originated as wheat in Kansas and other trans-Mississippi freight tariff territory from which movement was over the Rock Island to Davenport, where the grain was milled into flour. The flour was then shipped from Davenport through Peoria (where it passed from the Rock Island to the N. Y. C. & St. L. Railroad Company—"The Nickel Plate") to destination on the Nickel Plate. The origin of the selected typical car was in Kansas, and the destination was New Bremen, Ohio (which takes the rate of the next removed point—Minster, Ohio). There is no dispute that the through rate from origin to destination was a combination of the Rock Island rate to Peoria, plus the Nickel Plate rate from Peoria to destination. There is no dispute that the charges to Peoria were correct. The controversy is as to the proper rate over the Nickel Plate from Peoria. The tariff involved is the Nickel Plate tariff G.F.D.No.15-S, IC.C.No. 5390—effective March 24, 1932—with supplements 1 to 37, inclusive. The portion of the tariff involved is that relating to "Proportional Rates on Grain, and Grain Products, Carloads" moving eastward from Peoria, Ill., over the Nickel Plate.

This tariff (p. 91) sets forth five rates (in separate vertical columns)[1] on grain products from Peoria to Minster, Ohio (New Bremen, Ohio). The parties agree that three of these rates (headed "Northern Iowa," "Northwest," and "Re-shipping") are inapplicable. As to the remaining two, appellees contend that the class (first column) headed "Trans-Mississippi" controls, while appellant relies upon class (fourth column) headed "Milled or Malted in Northwest Ex-Trans-Mississippi." The latter rate is 2 cents per hundred weight less than the former.

Besides urging that the proper rate is clearly that claimed above, appellant presents two other contentions: That unless such rate clearly applies there is either (1) no applicable rate (in which case the court is without jurisdiction, under Texas & Pacific R. R. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L. Ed. 1255, to determine a rate) or (2) there is such ambiguity as to which of the two rates is applicable that it is entitled to the lower rate under United States v. Gulf Refining Co., 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082, and other cases.

Obviously, the determination of all of these controversies must be sought in the wording of the tariff.

As will be seen from footnote (1), each of the two above classes involved here calls for certain "Notes" which control the application of the respective class rate. To settle the application of the rate necessitates examination of these notes and determination of the requiremens of each note governing the particular rate class. We first examine the notes called for by the second above class ("Milled or Malted in Northwest Ex-Trans-Mississippi"). If this shipment is covered thereby, appellant must prevail whether or not the "Trans-Mississippi" class rate also covers it because this "Milled," etc., rate is the lower of the two. If this rate does not cover the shipment, we must then ascertain whether the "Trans-Mississippi" rate does.

I. The "Milled and Malted in Northwest Ex-Trans-Mississippi" Rate.

This rate class calls for note 11 and note 40. Since note 11 is common to both of these classes and note 40 only to the second, we first examine note 40[2]—peculiar to the second class—to ascertain if it covers this shipment.

The first thing to be noted is that this

[1] The main and divisional headings of this tariff are as follows:

PROPORTIONAL RATES ON GRAIN, AND GRAIN PRODUCTS, CARLOADS—
Continued
SECTION 1

See Notes 1 and 2, Pages 44 and 45, for List of Commodities taking Grain and Grain Products Rates

| Index No. | TO Points Shown on Pages 71 to 78 as Taking Rates Same as to | Trans-Mississippi | | | | Northern Iowa | | Northwest | | | | Milled or Malted in Northwest Ex-Trans-Mississippi | | Re-Shipping | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Grain (See Note 1) | | Grain Products (See Note 2) | | Grain (See Note 1) | Grain Prod-ucts (See Note 2) | Grain (See Note 1) | | Grain Products (See Note 2) | | Grain Products (See Note 2) | | Grain (See Note 1) | | Grain Products (See Note 2) | |
| | | Chicago,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. | Peoria,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. | Chicago,Ill. | Peoria,Ill. |
| | | FROM | | | | | | | | | | | | | | | |
| | | See Note 8 | See Note 8 | See Note 9 | See Notes 9 and 11 | See Note 12 | See Notes 11 and 12 | See Note 14 | See Note 14 | See Note 15 | See Notes 15 and 16 | See Note 11 | See Notes 11 and 40 | See Note 19 | See Note 21 | See Note 20 | See Notes 11 and 22 |
| | | Rates in Cents Per 100 Pounds | | | | | | | | | | | | | | | |
| 9320 | Millersburg.Ohio | 13 | 15 | @16 | @18 | 15 | @18 | 19 | 19 | 19 | 19 | @16 | @16 | 18½ | 19 | 18½ | 19 |
| 9325 | Mineral City Ohio | 15½ | 17½ | @19½ | @21½ | 17½ | @20 | 19 | 19 | 19 | 19 | @19½ | @19½ | 18½ | 19 | 19 | 19½ |
| 9330 | Minster.....Ohio | 11½ | 13½ | @14½ | @16½ | 13½ | @16½ | 13 | 13 | @15½ | @15½ | @14½ | @14½ | 13 | 13 | 13½ | 15½ |
| 9335 | Mishawaka...Ind. | | 13½ | | 13 | 13½ | 13½ | | | | | | | | 13 | | 13 |
| 9340 | Mitchell....Ind. | 13 | 13 | @14½ | @15½ | 13 | @15½ | 13 | 13 | @15½ | @15½ | @14½ | @14½ | 12½ | 13 | 14½ | 15½ |

The two classes (under these headings) which are involved here are the Peoria rates on Grain Products under the main headings "Trans-Mississippi" and "Milled or Malted in Northwest Ex-Trans-Mississippi."

[2] This note 40 is as follows:
"Grain Products Milled in Transit at

Northwestern or Interior Milling Points from Grain Originating in Trans-Missis-

note 40 relates to "Grain Products Milled in Transit at Northwestern Or Interior Milling Points from Grain Originating in Trans-Mississippi River Territory; Also Grain Products from Peoria, Ill., etc., Originating in Trans-Mississippi River Territory as Provided Below." This shipment comes within this note heading because it is a grain product (flour) "milled in transit at * * * Interior Milling Points [Davenport being such a point as shown by Note 18 which lists 'Interior Milling or Malting Points'] from grain originating in Trans-Mississippi River Territory" (Kansas being within "Trans-Mississippi River Territory" as shown by Central Freight Association Tariff, I.C.C. 2566, in evidence here). But although this shipment is within the "heading" of note 40, that heading is expressly limited to "as provided below"—meaning the body of the note.

After stating that the rates under this note are applicable to "grain products carloads"—which this shipment was—the note is divided into two sections: (1) and (2). Section (1) is not applicable because it covers shipments from certain named points which do not include Peoria or Davenport and also because it applies only to "shipments milled or malted in transit at Northwestern Milling or Malting points as described in Note 17"—note 17 listing such "points," but not including Davenport.

Section (2) provides that rates will apply from named points, including Peoria, "as follows"—referring to five paragraphs lettered (a), (b), (c), (d), and (e). Paragraph (a) is not here applicable because it is limited to milling "at Northwestern Milling or Malting Points" as designated in note 17 which does not include Davenport. Paragraph (b) is not applicable here because, although this "grain product" was "milled * * * in transit at interior milling * * * points named in Note 18 [Davenport being so named] from grain originating in Trans-Mississippi River Territory as described in Note 10" (Kansas points being within such description), yet this shipment was not "moved, as grain, through northwest milling or malting points named in Note 17"—all points so named being in Minnesota and South Dakota and this shipment never entered either of those states, having moved "as grain" through Wichita and Kansas City to Davenport. Paragraph (c) does not apply because limited to "shipments originating at points enumerated in Note B below," which names neither Davenport nor any Kansas point. Paragraph (d)

---

sippi River Territory; also Grain Products from Peoria, Ill., etc., Originating in Trans-Mississippi River Territory as provided below.

Note 40          (See Also Note 26)

Rates subject to this Note will apply on Grain Products, carloads, (see Note 2), as follows:

(1) Chicago, Ill., rates will apply from Burnham, Ill., Chicago, Ill., Hammond, Ind., Hessville, Ind., Osborn, Ind., Solvay, Ill., and Stony Island, Ill., on shipments milled or malted in transit at Northwestern Milling or Malting Points as described in Note 17 (except points enumerated in Note A below), from Grain originating at points in Trans-Mississippi River Territory as described in Note 10.

(2) Peoria, Ill., rates will apply from Bloomington, Ill., Crandall, Ill., Pekin, Ill., Peoria, Ill., and South Bartonville, Ill. as follows:

(a) When milled or malted in transit at Northwestern Milling or Malting Points as described in Note 17 (except points enumerated in Note A below), from Grain originating at points in Trans-Mississippi River Territory as described in Note 10. (See also Note 11).

(b) On Grain Products (see Note 2), milled or malted in transit at Interior Milling or Malting Points named in Note 18, from Grain originating in Trans-Mississippi River Territory as described in Note 10, which has moved, as grain, through Northwestern Milling or Malting Points named in Note 17 (except points enumerated in Note A, below). (See also Note 11).

(c) On shipments originating at points enumerated in Note B, below.

(d) On shipments milled or malted in transit at Interior Milling or Malting Points named in Note 18, from grain originating at points enumerated in Note B, below.

(e) On shipments originating at points in Trans-Mississippi River Territory as described in Note 10, moving through Sioux City or Leeds, Iowa, milled or malted thereat or at points west or north thereof and- intermediate thereto and which are subject to combination of local and/or proportional rates to and from Sioux City or Leeds, Iowa (not applicable on traffic moving under through one factor rates, except as provided in paragraph [d]). (Inf. Cir. No. 13363)"

Note A, called for in note 40, is a list of various stations in Minnesota and South Dakota. Note B is a similar list in Iowa and South Dakota—Davenport is not listed therein.

is inapplicable because limited to "grain originating at points enumerated in Note B below" which includes no Kansas points. Paragraph (e) is inapplicable because limited to shipments "moving through Sioux City · or Leeds, Iowa, milled \* \* \* thereat, or at points west or north thereof and intermediate thereto"—this shipment not moving through Sioux City or Leeds and not being milled thereat or at a point west, north or intermediate thereto. Thus it is clear that note 40 cannot cover this shipment.

We next examine note 11 (called for under class "Milled or Malted in Northwest Ex-Trans-Mississippi"). This note is also called for under the other class "Trans-Mississippi." If this note covers this shipment, appellant is entitled to the lower rate specified in the former class. In examining this note it is important to bear in mind that it is expressly made applicable not only to the two classes here in dispute, but to all five of the classes covered by this tariff on grain and grain products—the three others being "Northern Iowa," "Northwest," and "Re-Shipping." It is a general note to be considered in connection with all classes of rates under this tariff.

The first thing to be observed in this note[3] is the heading which broadly states

[3] Note 11 is as follows:

"Application of Re-shipping or Proportional Rates on Grain Products, Grain By-Products or Starch, Mixed, Milled or Malted, at Bloomington, Crandall, Pekin, Peoria or South Bartonville, Ill., or Points West or North Thereof.

Except as may be otherwise provided in tariff, or as amended, the re-shipping or proportional Grain Product, Grain By-Product or Starch rates from Peoria, Ill., making reference hereto will apply east of Bloomington, Crandall, Crescent, Pekin, Peoria or South Bartonville, Ill., on Grain Products (see Note 2), Grain By-Products (see Note 3) or Starch (as described in Note 3), milled, malted or mixed at Bloomington, Crandall, Pekin, Peoria or South Bartonville, Ill., or points west or north thereof, from Grain (see Note 1), Grain Products (see Note 2), By-Products of Grain (see Note 3) or Starch (as described in Note 3), originating beyond the milling, malting or mixing point as indicated below.

| When the Grain (see Note 1), Grain Products (see Note 2), By-Products of Grain (see Note 3) or Starch (as described in Note 3), originates in territory shown below: | The outbound rate on the Product from Bloomington, Crandall, Crescent, Pekin, Peoria or South Bartonville, Ill., will be the re-shipping rate on Grain Products (see Note 2), Grain By-Products (see Note 3) or Starch (as described in Note 3), (see exception below), as the case may be, originating in the territory shown below: Exception—The outbound rate on Starch milled at Bloomington, Crandall, Pekin, Peoria or South Bartonville, Ill., will be the re-shipping rate on Grain Products. Note—In the absence of specific proportional or re-shipping rates from points mentioned above those applicable from Peoria, Ill., will apply. |
|---|---|
| Trans-Mississippi River Territory. (See Note 10), except points in Northern Iowa Territory. (See Note 13)........ | Trans-Mississippi River Territory. (See Note 10) except points in Northern Iowa Territory. (See Note 13). |
| Northern Iowa Territory. (See Note 13)....... | Northern Iowa Territory. (See Note 13). |
| Re-shipping Territory. (See Note 22) ....... | Re-shipping Territory. (See Note 22). |
| Northwestern Territory. (See Note 16) ....... | Northwestern Territory. (See Note 16). |
| Northwest Milling and Malting Points. (See Notes 16 and 40)....... | Northwest Milling and Malting Points. (See Notes 16 and 40). |

To determine the origin point of the articles milled, mixed or malted in transit, expense bills covering the inbound articles must be surrendered at time of out-bound shipment from milling, mixing or malting point."

the note is an "application of reshipping or proportional rates on grain products * * * milled * * * at Bloomington, Crandall, Pekin, Peoria or South Bartonville, Ill., or points west or north thereof." ·Since Davenport is "west" of these named points and the milling was, at Davenport, it is within the above designation. Therefore, we must examine the body of the note to ascertain how this shipment is affected thereby.

The first significant statement in the body of the note is that "except as may be otherwise provided in ˙tariff, or as amended"[4] the Peoria rates will apply on grain products milled at any of the five above named places "or points west or north thereof *from grain* ˙* * * *originating beyond the milling* * * * *point as indicated below"* (italics added). Thus we are directed to the *origin* of the grain as the factor determining the rate to be taken by the grain product milled at any of the above designations (which include Davenport).

"Below," the note is divided into two vertical columns. The first column is a designation of territories of origin. The second column is a designation of the class rate applicable to the corresponding "origin" in the first column[5]. Examination of the five designated territories of origin set out in the first column makes clear that this shipment can be placed only under the origin designation "Trans-Mississippi River Territory (see note 10), except points in Northern Iowa Territory. (see note 13)." The four other designations do not include any Kansas points while the "Trans-Mississippi" territory expressly includes "Kansas.—All stations." The designated origin of this shipment being thus definitely fixed in this note, "The outbound rate on the Product from * * * Peoria * * * will be the re-shipping rate on Grain Products * * * originating in * * * Trans-Mississippi River Territory." Thus, the rate upon this shipment is, under this note, excluded from "Northwest Milling and Malting Points" territory. Therefore, the rate is not found under the classifica-

tion urged by appellant because neither of the notes (note 11 and note 40) called for by that classification so include it. This disposes of two of the three contentions· urged by appellant, that is, of the contention that such classification covers the shipment and of the contention that the shipment falls within both of the classifications (hence, appellant is entitled to the lower rate under the classification it urges).

II. The "Trans-Mississippi" Rate.

There is left the contention of appellant that no rate covering this shipment is stated in the tariff and therefore the court is without jurisdiction to determine and apply a rate. The first investigation is as to whether the entire tariff fails to state a rate applicable to the shipment. The above analysis of note 11 (broadly applicable to all five classes under the tariff) shows that flour milled at Davenport from grain originating in Kansas (trans-Mississippi Territory) takes the rates under class "Trans-Mississippi" unless there is some exception to the tariff.[6] The only other note called for under this class is note 9. Unless note 9 contains such an "exception" or some limitation, note 11 compels application of the rates under this "Trans-Mississippi" class. Appellant contends that the scope of rates provided under "Trans-Mississippi" class is "limited by Note 9, and Note ˙9 does not cover Davenport, hence" this class cannot cover this shipment.

There is no dispute and the rate expert for appellees testified in reference to the notes under "Trans-Mississippi," that "Notes 9 and 11 are a description, or rather the application of the rates in that column.".

Note 9 is as follows:

"Grain Products (Trans-Mississippi)
˳(See Also Note 26)

Note 9—Rates subject to this note will apply on Grain Products, Carloads (see Note 2), as follows:

1a—Chicago, Ill., rates will apply from Burnham, Ill., Chicago, Ill., Hammond, Ind., Hessville, Ind., Osborn, Ind., Solvay, Ill., and Stony Island, Ill., on traffic milled or malted thereat from Grain (see Note

---

[4] There is no contention nor basis in the record for contending that any such exception or amendment here applicable exists.

[5] While the designations in this second column are not precisely the same as the headings of the five columns of the tariff shown in footnote (1), they make sense

if regarded as the same and they are meaningless otherwise. While these references can be thus identified, there is no excuse for this lack of definite statement.

[6] Note 11 provides such rates shall apply "Except as may be otherwise provided in tariff, or as amended."

1), originating in Trans-Mississippi River Territory as described in note 10, also on through consignments from such territory, except as otherwise specifically provided.

2a—Peoria, Ill., rates will apply from Bloomington, Ill., Crandall, Ill., Pekin, Ill., Peoria, Ill., and South Bartonville, Ill., on through consignments from points in Trans-Mississippi River Territory as described in Note 10 (see exception below) also on traffic mixed, milled or malted at Bloomington, Ill., Crandall, Ill., Pekin, Ill., Peoria, Ill., and South Bartonville, Ill., as provided in note 11, except as otherwise specifically provided.

Exception—Peoria, Ill., rates will not apply on traffic from points in Northern Iowa Territory as described in Note 13. (Inf.Cir. 6437)"

Obviously, paragraph 1a of this note applies Chicago rates and is not pertinent here. We are concerned with Peoria rates which are treated under paragraph 2a. This note states "Rates subject to this Note will apply on Grain Products, carloads." Paragraph "2a" applies the Peoria rate to two kinds of shipments of grain products: (1) "through consignments from points in Trans-Mississippi River Territory as described in Note 10" and (2) "traffic * * * milled * * * at Bloomington, Ill., Crandall, Ill., Pekin, Ill., Peoria, Ill., and South Bartonville, Ill., as provided in Note 11." Neither party does or could contend that these shipments were within "through consignments" of grain products. The question here is concerned with the second kind, that is, "traffic * * * milled" in transit. This provision is confined to milling at the five named places "as provided in Note 11." Without the statement "as provided in Note 11," this provision would apply to all flour milled at and only at any of the five places, *irrespective of the origin of the grain,* unless the Note heading—"Grain Products (Trans-Mississippi)"—could be construed to mean that all rates under the note are confined to Trans-Mississippi origin of grain, which is doubtful because the heading refers to grain "products" and the parenthesis seems to refer to such rather than to the grain from which the products may be milled. The heading is not very helpful here. What then is the meaning of the qualification "as provided in Note 11." In what way do the provisions of note 11 affect the rates on grain milled at the five places named in note 9? Note 11 cov-

ers reshipping or proportional rates east of the five places named in note 9 on grain products milled at any of the five places "or points west or north thereof" from grain having the origins shown in note 11. The effect of note 11 on note 9 is to limit the in-transit milling under note 9 to grain originating in Trans-Mississippi Territory instead of leaving origin of milled grain unstated—as it is under this portion of note 9 without the reference to note 11. Since the five milling places named in note 9 are the same as the five in note 11, note 9 adds no information not already given and covered in note 11 which is broader in this respect as it includes also milling at "points west or north" of the five places. This part of note 9 is merely a useless repetition of a portion of note 11. Although note 11 affects note 9 (by determining the origin of grain milled in transit at the five points named in note 9), note 9 does not affect, by limitation or otherwise, note 11. Clearly, note 9 is a partial duplication of note 11 and thus is a piece of clumsy rate making. However, it does not limit note 11.

Since note 11 carries the rate on these shipments to column 1 of the tariff and since note 9 does not change that situation, we must conclude that column 1 stated the applicable rate. The judgment of the trial court is affirmed.