Eppstein v. Martin et al., etc.

*Victor J. Roberts,* for plaintiff.

*Desmond J. McTighe* and *Bernard G. Segal,* for defendants.

CORSON, J., May 29, 1942.—To the statement of claim in this case defendants have filed an affidavit of defense raising questions of law in the nature of a demurrer. While defendants set forth six reasons in support of their demurrer, yet their entire contention is covered by their sixth reason, which alleges that, "Under said statutory provisions, this honorable court has no jurisdiction to entertain the present action except upon appeal from an order of the Milk Control Commission."

The suit is brought upon a book account alleging that the prices charged in such account are not less than the regular minimum prices required to be paid for such milk under the Pennsylvania Milk Control Laws of April 30, 1935, P. L. 96, and April 28, 1937, P. L. 417, and the various official general orders of the Pennsylvania Milk Control Board and Pennsylvania Milk Con-

trol Commission, respectively, issued from time to time in accordance therewith. Plaintiff admits payments in the total amount of $34,020.58, on account, leaving a balance due of $1,766.55. Defendants allege that the Milk Control Acts take from plaintiff his common-law right to sue in a court of law for the price of milk sold to a dealer. Admittedly no case exists in Pennsylvania sustaining this contention by defendants.

While the affidavit of defense does not mention it, yet the brief raises some question about whether the contract is oral or written and whether such facts should not be alleged in the statement. In the first statement it is alleged to be an oral agreement. In the amended statement it is not mentioned. There is a conflict of authority in Pennsylvania upon the point of whether or not it must be alleged in the statement whether the contract was oral or written where the contract is an implied contract or upon a book account. The courts of Allegheny, Berks, Lancaster, York, Schuylkill, and Lackawanna Counties have held that an action on a contract implied in law, or a book account, does not require an averment as to whether the contract was oral or written: 3 Standard Pa. Practice, p. 333. The cases there cited hold that only an express contract can be formed in words and that where a contract is implied in law this provision of the Practice Act is meaningless. See also Wesson Oil Snowdrift Co. v. Vanston, 35 Lack. Jur. 98 (1934), and Kingsbury Breweries Co. v. Rohrbach, 22 D. & C. 262 (1934).

Defendants' argument that this court is without jurisdiction to entertain the present suit is based upon a ruling of the Federal courts which is known as the doctrine of "primary exclusive jurisdiction". While probably this question of jurisdiction should have been raised by a petition under the Act of March 5, 1925, P. L. 23 (see Reeser's Milk Co. v. Pates et al., 320 Pa. 11 (1935)), yet we feel that this question should be decided on its merits on the present pleadings.

The leading case relied upon by defendants is the case of Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426 (1907). That case decided that a shipper of goods upon an interstate railroad cannot sue at common law in a State court to recover allegedly excessive and unreasonable freight rates where these rates have been duly fixed by tariffs filed in accordance with the Interstate Commerce Act and have not been found to be unreasonable by the Interstate Commerce Commission. This case would certainly seem to be good law and common sense, because of the fact that before a recovery could be had in such a case it would be necessary for the State court to find that the rates charged were unreasonable. The sole power to make such findings being in the Interstate Commerce Commission, obviously until such finding had been made by the commission the suit could not be sustained.

In the present case, however, the action is directly opposite to the Abilene case, supra. Plaintiff, far from attacking the Milk Control Board, relies upon its orders to sustain plaintiff's contention. Certainly, a railroad, would have the right to bring suit for freight charges against the shipper alleging that the said rates were the rates approved and fixed by the Interstate Commerce Commission, and it would not be necessary to take the matter before the commission. Even in the Abilene case, supra, the court recognized that a suit might be brought to recover illegal charges made by a railroad if such charges were in excess of the rates fixed as reasonable by the Interstate Commerce Commission. At page 442 of the Abilene case, the court indicates that the right of suit given under the Interstate Commerce Act of 1887, sec. 9, contemplates a decree in favor of an individual complainant and does not embrace the power to change any established schedules of rates, which power is conferred by the act upon the commission alone. This would indicate that a shipper has the right to recover from an interstate carrier

charges made in excess of the rates fixed by the commission.

In the present case plaintiff does not seek to recover back something that he was forced to pay in excess of rates fixed by the commission but merely seeks to recover for payments which allegedly should have been made in order to conform to the rulings and orders of the Milk Control Commission.

If defendants' contention is correct and plaintiff brought his action before the Milk Control Commission, that commission would have to pass upon, first, what actual payments were made and, second, upon the question of whether or not such payments were made in accordance with the regulations of the commission. In this court the question of fact would be passed upon by a jury and certainly the regulations of the Milk Control Commission cannot be so complex, or at least should not be so complex, that it is impossible for a court to construe their meaning. Certainly if such rulings and regulations are so complex that they cannot be construed or understood in a court of law, how can any farmer expect to take time enough to find out what they mean and be protected by them?

In an action before the commission the commission would exercise no discretion and it would be unnecessary for them to pass any new regulation or pass upon the reasonableness of their own regulations. In the event that the commission should find that payments had been made by defendants below the minimum payments required under the regulations of the commission, they could not give a judgment against defendants in favor of plaintiff. Their only action could be either by revoking defendants' license to buy and sell milk or to bring action upon the bond filed. Action on this bond could not be brought by plaintiff but would have to be brought in the name of the Commonwealth in the discretion of the Commonwealth's representative. Plaintiff would, therefore, lose control of the prosecution of

his own case and would be forced to rely upon the Milk Control Commission to prosecute the case for him. It is possible that the milk dealer might be a very small dealer and the taking away of his license might be no great punishment. We feel that plaintiff in the present case should not lose his right to obtain judgment, if possible, against defendants and his right to execution if such judgment is obtained.

Defendants rely upon the Abilene case, supra, as the case first applying the doctrine of primary exclusive jurisdiction. In their supplemental brief they call particular attention to the case of Texas & Pacific Railway Co. v. American Tie & Timber Co., Ltd., 234 U. S. 138 (1914). Defendants contend that this case is close to the present case upon the facts. The Texas case arose over a suit by a tie company seeking to recover damages for the alleged failure of the railway company to furnish cars for the transportation of railroad ties. A trial was held and damages were awarded to the tie company. At the trial it was brought out that the question to be decided was whether or not, when there is no special rate for oak cross ties, the rate for oak lumber shall apply. The Supreme Court, in passing upon the appeal, decided that whether cross ties were, or were not, lumber was a question on which there was a great diversity of opinion even among experts upon the subject and that the question should be determined in the first instance by the Interstate Commerce Commission. The court also reaffirmed the doctrine that courts cannot exert authority over subjects which primarily come within the jurisdiction of the Interstate Commerce Commission. Under the pleadings as they at present exist in this case there is nothing to indicate that any question except payment will arise in the case. It may be that at the trial of the case or at some later stage of the pleadings the motion to dismiss may have to be allowed but we do not feel that we can do so at the present time.

The cases cited by defendants with reference to the Public Service Commission of Pennsylvania are all distinguishable from the present case, since all of such cases would have required the court to pass upon the reasonableness of rates fixed by the Public Service Commission and the reasonableness of such rates can only be attacked first before the commission and then in court on appeal. The Milk Control Act of 1937, supra, sec. 1003, provides, inter alia, that ". . . any person . . . may institute such action at law or in equity as may appear necessary. . . ." To sustain defendants' present contention would absolutely negative that provision. Defendants contend, as already noted, that the rulings and regulations of the board are so technical that they could not be construed or understood by a court of law. This contention certainly cannot be consistent with the legislative intent, however, because under the criminal provisions of the act justices of the peace are permitted to construe such regulations in determining the guilt or innocence of persons alleged to have violated such regulations.

Defendants also contend that unless their contention is upheld different rulings may take place in every county of the State. This, of course, is possible under any act of assembly, yet an appeal in any case will standardize the ruling for the entire State. However, whatever may be the rulings in the different counties, no such rulings change the regulations themselves as made by the commission. The ruling in the Abilene case and other Federal cases cited was to prevent any court upsetting the rulings and regulations of a commission having sole jurisdiction to make such rulings and regulations, unless action was taken first before the commission itself and the ruling of the commission then brought before the court upon appeal where the statute provided for such appeal.

For the reasons given we feel that the following decree must be entered:

And now, May 29, 1942, the questions of law raised by defendants in their affidavit of defense are decided in favor of plaintiff, and defendants are directed to file an affidavit of defense upon the merits within 15 days after notice of this ruling.